# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3332

_____

Charles I. Covey,

        Petitioner-Appellant,

v.

United States of America,

        Respondent-Appellee.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States District Court for the Western District of Missouri.

_____

Submitted: January 15, 2004
Filed: July 30, 2004

_____

Before MELLOY, BRIGHT, and HANSEN, Circuit Judges.

_____

MELLOY, Circuit Judge.

Petitioner-Appellant Charles Covey brings this action to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The district court[1] denied his motion, and we granted a certificate of appealability on the issue of whether counsel's

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

alleged conflict of interest rendered his assistance ineffective in violation of Mr. Covey's Sixth Amendment right to counsel. For the reasons stated herein, we affirm the district court's decision.

## I. BACKGROUND[2]

In 1999, a jury convicted Mr. Covey of conspiracy to commit money laundering and aiding and abetting money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and 1956(a)(2). The district court entered preliminary judgment on the forfeiture count in the amount of $70,000 pursuant to 18 U.S.C. § 982, denied Mr. Covey's post-trial motions, sentenced Mr. Covey to fifty-seven months imprisonment, and fined Mr. Covey $19,118.44. Mr. Covey appealed his conviction and the preliminary order of forfeiture. In United States v. Covey, 232 F.3d 641 (8th Cir. 2000) (Covey I), we affirmed the district court's judgment and dismissed the forfeiture appeal as premature.

Mr. Covey was a certified public accountant, and he owned a corporation that specialized in making high risk loans. His conviction arose out of a loan he made to drug traffickers, Gary and Darrell Hart. The Harts were brothers and aspired to open a motorcycle business. The Harts had ample cash derived from their illegal drug activities to fund the business. However, federal law requires that certain cash transactions be reported to federal authorities. In order to disguise the source of funding for the motorcycle business, the Harts entered into an agreement with Mr. Covey. Through his corporation, Mr. Covey loaned the Harts $50,000 in exchange for a $70,000 cash payment. Mr. Covey and the Harts agreed that $10,000 of the loan was an origination fee, another $10,000 was collateral for interest on the loan, and the

---

[2]Portions of this background discussion are taken directly from this panel's earlier decision, United States v. Covey, 232 F.3d 641 (8th Cir. 2000) (Covey I), without specific attribution.

remaining $50,000 was collateral on the principal. The loan agreement documentation did not express these terms, however. Instead, the documentation represented that the Harts' motorcycle business inventory was to be collateral for the loan, even though the inventory did not yet exist. Furthermore, Mr. Covey did not take a security interest in the later-acquired inventory.

The Harts transferred the $70,000 cash payment for the loan to Mr. Covey in a restaurant parking lot. This large sum of cash was bound by rubber bands and was delivered to Mr. Covey in a paper bag. In keeping with the loan agreement, the Harts made monthly payments on the loan. However, their business failed, and after only six months, they ceased making payments. Consequently, Mr. Covey began taking payments from the cash collateral.

At some point, Mr. Covey contacted a lawyer about concluding the loan. Mr. Covey's attorney advised him to deposit the remaining principal in Mr. Covey's corporate account and to return the excess collateral to the Harts. Mr. Covey attempted to return the excess collateral by mail, but the Harts suspected that they were under investigation and that Mr. Covey was cooperating with law enforcement. Therefore, they refused to retrieve their mail. In addition, counsel advised Mr. Covey to belatedly file the proper federal form, Internal Revenue Service Form 8300, to report his receipt of over $10,000 in cash. Mr. Covey complied and checked the "suspicious transaction" box on the federal form. A federal grand jury returned a superseding indictment in August of 1999, charging Mr. Covey with money laundering offenses arising out of these facts.

At trial, Mr. Covey sought to establish the legitimacy of the Harts' loan, and he testified to this effect. In returning a guilty verdict, the jury rejected his testimony. In this § 2255 petition, Mr. Covey alleges that trial counsel rendered ineffective assistance because counsel had a conflict of interest. Because trial counsel advised Mr. Covey how to conclude the loan, Mr. Covey claims that an advice-of-counsel

defense should have been presented to the jury to rebut the government's attempt to paint his actions in concluding the loan as criminal. The government disagrees that a conflict of interest existed and contends that, even assuming a conflict did exist, it did not adversely affect the proceedings. The district court rejected Mr. Covey's arguments and found that, even if Mr. Covey's trial attorney had a conflict, Mr. Covey waived his right to be represented by conflict-free counsel.

## II.  DISCUSSION

A district court's decision in a habeas claim of ineffective assistance of counsel presents a mixed question of law and fact. Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988) (en banc). We review the ineffective assistance issue de novo, but findings of underlying predicate facts are reviewed for clear error. Id.; accord Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("In a Section 2255 proceeding, we review legal issues *de novo* and factual findings under a clear error standard." (quoting United States v. Walker, 198 F.3d 811, 813 (11th Cir. 1999))).

The Supreme Court has long-recognized the critical role that assistance of counsel plays in protecting the Sixth Amendment's guarantee of a fair trial. See Strickland v. Washington, 466 U.S. 668, 685 (1984). "Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself." Cuyler v. Sullivan, 446 U.S. 335, 343 (1980). "For that reason, the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" Strickland, 466 U.S. at 686 (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). This right "embraces the right to conflict-free counsel." Dawan v. Lockhart,  31 F.3d 718, 720-21 (8th Cir. 1994).

An ineffective-assistance claim generally requires two showings. "First, the defendant must show that counsel's performance was deficient." Strickland, 466 U.S.

at 687.  This entails "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  Second, the defendant must show prejudice.  Id.  To show prejudice, he or she must prove that "counsel's errors were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable."  Id.; accord Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (admonishing that the prejudice prong encompasses more than mere outcome determination; rather, the focus of the question of prejudice is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair").

However, there are three classes of ineffective-assistance claims, described in Strickland, in which we presume prejudice rather than require a defendant to demonstrate it.  See Strickland, 466 U.S. at 692.  One such class encompasses ineffective-assistance claims where counsel labored under an actual conflict of interest.  Id.  In Cuyler v. Sullivan, the Supreme Court held that if a defendant who raised no objection at trial can show "an actual conflict of interest [that] adversely affected his lawyer's performance," prejudice may be presumed.  446 U.S. at 348.

The Supreme Court recently noted that some circuits have "unblinkingly" applied Cuyler to "all kinds of alleged attorney ethical conflicts."  Mickens v. Taylor, 535 U.S. 162, 174-75 (2002) (citation and quotation omitted) (collecting cases).  The Court made clear, however, that it had never extended the Cuyler standard to conflicts other than those arising from joint representation at trial.  Id.  Mickens itself involved a successive representation conflict, and the Court assumed that the case properly proceeded under Cuyler in the lower courts.  Id.  The Court cautioned, however, that its decision should not be misconstrued as extending the Cuyler rule to conflicts other than joint representation:  "In resolving this case on the grounds on which it was presented to us, we do not rule upon the need for the [Cuyler] prophylaxis in cases of successive representation.  Whether [Cuyler] should be extended to such cases remains, as far as the jurisprudence of this Court is concerned, an open question."  Id. at 176.

The parties have proceeded under the assumption that the Cuyler standard applies to the conflict alleged by Mr. Covey. This is so even though Mr. Covey does not allege a conflict arising out of multiple or successive representation. Instead, he argues that his lawyer gave him faulty advice concerning how to properly "wind up" the Harts' loan. Mr. Covey argues that the government painted his actions in complying with counsel's advice as evidence of criminal behavior. Therefore, he contends that either he or his lawyer should have been able to testify as to this pre-indictment advice to show the legitimacy of the Harts' loan and Mr. Covey's actions. Mr. Covey claims that he could not present such testimony without waiving the attorney-client privilege, and his lawyer was ethically precluded from acting as an advocate-witness. Moreover, Mr. Covey contends that his lawyer had an interest in preventing such testimony to cover up the allegedly incompetent nature of the advice.

In this circuit, it is unclear whether we limit application of Cuyler to conflicts involving multiple or serial representation. See Wemark v. Iowa, 322 F.3d 1018, 1021 (8th Cir. 2003) ("We have not yet clarified whether Cuyler's presumed prejudice analysis extends beyond such circumstances to all conflict of interest cases."); United States v. Young, 315 F.3d 911, 914 n.5 (8th Cir. 2003) (stating, in dicta, application of Cuyler is limited to multiple and serial representation conflicts); Caban v. United States, 281 F.3d 778, 783 (8th Cir. 2002) (distinguishing as dicta previous statements in Eighth Circuit caselaw that Cuyler applies to all conflict of interest cases) (citing Koste v. Dormire, 260 F.3d 872, 879 (8th Cir. 2001); Atley v. Ault, 191 F.3d 865, 870 n.4 (8th Cir. 1999)). In Atley, we indicated that the Cuyler rule should be applied more broadly. Atley, 191 F.3d at 870 n.4. In Young, however, we observed, "'[W]here the alleged conflict involves ethical issues other than multiple or serial representation, this Circuit has held that Strickland is still the appropriate standard." Young, 315 F.3d at 914 n.5. Like the court in Caban, "we need not create even the appearance of a conflict with our prior statement because we need not choose between the Strickland and Cuyler standards in the present case."

Caban, 281 F.3d at 783. Under either rule, Mr. Covey's ineffective-assistance-of-counsel claim fails.

For purposes of our Cuyler analysis, we will assume that Mr. Covey's trial counsel labored under a conflict of interest. See United States v. Merlino, 349 F.3d 144, 152 (3d Cir. 2003) (finding actual conflict where government used attorney's trips to prison to meet with client as evidence of client's consciousness of guilt, because attorney could have been called as witness to rebut such inference). Because Mr. Covey did not lodge an objection to the conflict at trial and because he does not allege the type of conflict that would obligate the trial judge to initiate an inquiry into the conflict, Cuyler requires that Mr. Covey demonstrate that the conflict adversely affected his lawyer's performance.[3] Cuyler, 446 U.S. at 348. Mr. Covey has failed to do this.

"Adverse effect" is not the equivalent of prejudice. Id. at 349-50. To demonstrate adverse effect, Mr. Covey must identify "some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." United States v. Flynn, 87 F.3d 996, 1001 (8th Cir. 1996). "'Effect on representation' mean[s] that the conflict caused the attorney's choice, not that the choice was prejudicial in any other way." McFarland v. Yukins, 356 F.3d 688, 705 (6th Cir. 2004). Thus, the

_____

[3]Historically, we characterized the Cuyler standard as requiring, one, a showing of an actual conflict, and two, a showing that the conflict adversely affected the lawyer's representation. See, e.g., Johnson v. Norris, 207 F.3d 515, 519 (8th Cir. 2000) ("[T]he petitioner must prove both that his attorney acted under an actual conflict of interest, as opposed to just a potential one, and that the conflict of interest actually affected the adequacy of the representation.") (internal citations omitted). The Supreme Court in Mickens, however, clarified that the term "actual conflict" embraces both the cause and effect elements of Cuyler. Mickens, 535 U.S. at 172 n.5. The Court stated, "[T]he [Cuyler] standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Id.

-7-

question we must answer in this case is whether Mr. Covey's counsel's alleged conflict affected his choice not to present an advice-of-counsel defense to rebut the government's allegation that Mr. Covey's actions in concluding the Harts' loan were evidence of his guilt.

The Fourth Circuit requires defendants urging an ineffective-assistance claim based on conflict of interest to "identify a plausible alternative defense strategy or tactic that [their] defense counsel might have pursued," "show that the alternative strategy was objectively reasonable under the facts of the case," and "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001) (en banc), aff'd, 535 U.S. 162 (2002). Mr. Covey has identified reliance on the advice of counsel as the alternative defense strategy, but he cannot show that this strategy was objectively reasonable given the evidence that a defendant must put forth in order to assert it.

The district court properly recognized that reliance on the advice of counsel requires independent evidence "showing (1) [the defendant] made full disclosure of all material facts to his [or her] attorney before receiving the advice at issue; and (2) he [or she] relied in good faith on the counsel's advice that his [or her] course of conduct was legal." United States v. DeFries, 129 F.3d 1293, 1308 (D.C. Cir. 1997) (per curiam); accord United States v. Petrie, 302 F.3d 1280, 1287 (11th Cir. 2002) ("The evidentiary predicate for this defense is that the defendant 'fully disclosed all material facts to his attorney' and 'relied in good faith on the advice given by his attorney.'") (citations omitted); United States v. Butler, 211 F.3d 826, 833 (4th Cir. 2000) (requiring full disclosure of all pertinent facts to counsel and good faith reliance on counsel's advice in order to invoke such reliance as a defense); United States v. Lindo, 18 F.3d 353, 356 (6th Cir. 1994) (same). There was significant evidence at trial that, from the inception of the loan, Mr. Covey knew that the Harts intended to launder drug proceeds. The Harts testified that they informed Mr. Covey that the money used for the loan transaction was derived from the sale of marijuana. Other evidence of Mr. Covey's knowledge of the illegal nature of the loan included

the unusually high expected return on the loan (37%); the exchange of $1000 stacks of cash, bound in rubber bands in a paper bag; the misrepresentation of collateral on the loan agreement that indicated the Harts' motorcycle inventory was collateral even though, at the time the loan was made, they had no inventory; and Mr. Covey's failure to file a Form 8300 at the time the loan was made to indicate his receipt of currency in excess of $10,000.

In short, all the evidence in this case (apart from Mr. Covey's self-serving testimony) indicates that Mr. Covey was well aware of the illegality of the loan to the Harts. To assert good faith reliance on his trial counsel's advice, Mr. Covey would had to have introduced evidence that he disclosed this knowledge to his counsel, and this evidence would have been damning. Clearly, reliance on counsel's advice would not have been objectively reasonable under the facts of Mr. Covey's case. Consequently, counsel's alleged conflict did not adversely affect his decision to forego the advice-of-counsel defense. See Mickens, 240 F.3d at 360. Mr. Covey, therefore, was not denied the effective assistance of counsel under Cuyler.

For these same reasons, Mr. Covey was not prejudiced within the meaning of Strickland, nor was his attorney's performance deficient. See Strickland, 466 U.S. at 687. "In assessing counsel's performance, courts defer to reasonable trial strategies and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (quoting Strickland, 466 U.S. at 689). A showing of prejudice requires a determination by the court that "'there is a reasonable probability [sufficient to undermine confidence in the outcome] that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (alteration in original) (quoting Strickland, 466 U.S. at 694). Even absent the conflict of interest, assuming it existed, the government presented ample evidence that Mr. Covey was guilty of money laundering offenses. Moreover, the vast majority of the evidence against Mr. Covey predates the conflict of interest that he alleges resulted in ineffective assistance of counsel. See discussion supra. Because of this ample evidence of guilt, the result of Mr. Covey's trial is reliable and will not be disturbed.

Finally, we conclude that the district court did not abuse its discretion in ruling without an evidentiary hearing, because the record included all of the information necessary for the court to rule on the motion.  <u>Rogers v. United States</u>, 1 F.3d 697, 699 (8th Cir. 1993) (per curiam) (standard for whether hearing is necessary); <u>Widgery v. United States</u>, 796 F.2d 223, 224 (8th Cir. 1986) (standard of review).

Accordingly, we affirm.

_____