# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2057

_____

|  |  |  |
|---|---|---|
| Peter George Noe, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| United States of America, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: November 19, 2009
Filed: April 8, 2010

_____

Before WOLLMAN, JOHN R. GIBSON, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

In 2003, Peter Noe was convicted by a jury of conspiracy to distribute methamphetamine and conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B), 846, and 851, and was sentenced to 480 months' imprisonment. His conviction and sentence were affirmed on direct appeal. United States v. Noe, 411 F.3d 878 (8th Cir. 2005). In 2007, Noe petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, arguing, in part, that he was denied his Sixth Amendment right to effective assistance of counsel. The district court[1] denied

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

Noe's petition and granted a certificate of appealability on the issue of whether trial counsel was ineffective because of dual representation or a conflict of interest. Noe appeals, arguing the district court erred in (1) determining that there was not joint representation, (2) finding that Noe waived his right to conflict-free representation, (3) denying a habeas hearing, and (4) refusing to expand the certificate of appealability. We affirm.

## I. Background

Noe and Timothy Schultz led a methamphetamine conspiracy in Austin, Minnesota, from 2000 to 2002. Noe also distributed marijuana.

Following Noe's and Schultz's arrests, the district court appointed Rick Mattox to represent Noe and Nancy Vanderheider to represent Schultz. Before trial, Noe retained Albert Garcia to represent him and Schultz retained Bobby Sea, thus replacing Mattox and Vanderheider.

Noe's telephone conversations were recorded during his incarceration. In one recording, Noe stated that he and his family had raised around $60,000 for Noe's and Schultz's defense and that Schultz "[i]s a rock . . . he aint gonna [say] nothin' about me." The government moved for an inquiry into a potential conflict of interest because the conversations indicated that Noe's family was paying for Schultz's attorney. The government requested "an on-the-record inquiry of both defendants, but particularly defendant Schultz, to determine whether they understand the potential conflict of interest and are willing to waive any such conflict." Garcia opposed the motion, informing the court that the defendants had signed a waiver of conflict of interest.

The district court granted the government's motion and advised Noe and Schultz before trial of their right to representation by independent counsel. The

district court stated that regardless of how an attorney is compensated "people's intentions frequently follow the money, but realistically the fact somebody has more money [and] can pay for somebody else's services, that happens. That's permissible. But as long as you understand the nature of the possible conflict, you can also waive it." The district court asked both defendants whether they had considered and discussed these issues before they signed the waiver. Both Noe and Schultz responded affirmatively.

Several of Noe's recorded conversations were admitted into evidence at trial. In one recording, Noe said "[t]ell [him] I said blast me two cutie pies tomorrow for . . . sure, and Friday I'm gunna blast him seven back." Austin City Police Department Detective David Schafer testified that a "cutie pie" is slang for a quarter pound and that "seven" refers to $7000. Schafer testified that, based on that price and quantity, the drug being discussed was methamphetamine.

Throughout his habeas proceedings in the district court, Noe was represented by Howard Kieffer, who appeared *pro hac vice*, with Mattox serving as local counsel. Noe argued, among other things, that he had been deprived of effective assistance of counsel because Garcia had impermissibly represented both defendants and had an actual conflict of interest.

Noe argued that Garcia had an actual conflict of interest because (1) Schultz's relatives paid Garcia's fees, (2) Garcia hired Sea, his former law associate, to represent Schultz, and (3) Garcia transferred payment to Sea for that representation. According to Noe, the conflict adversely affected his defense because Garcia failed to present a "split conspiracy defense"—one that would argue that Schultz alone was responsible for the methamphetamine business—and failed to "point the finger" at Schultz because Garcia was loyal to Schultz. Noe claimed that an investigator retained by Mattox had uncovered evidence that Schultz was solely responsible for the sale of methamphetamine and that Noe was involved only in the sale of marijuana.

Noe also advanced claims of actual innocence and ineffective assistance of counsel based on a potential conflict of interest and a failure to investigate.

Noe submitted several documents in support of his § 2255 petition, including affidavits, the waiver of conflict of interest, and an unsworn letter recanting testimony. The affidavits explained the commingling of funds for his and Schultz's representation. Schultz's mother stated that she paid Garcia $5000 to represent Schultz. Noe's mother stated that she paid Garcia $5000 to defend Noe. Andrea Schultz, Schultz's sister and Noe's girlfriend, stated that Garcia asked her to deed her home to him to pay for Noe's representation. Although the waiver of conflict of interest was signed by all of the parties, it was drafted as a waiver of Schultz's right to conflict-free representation. It identified Schultz and Noe as co-defendants, Garcia as the attorney for the defendant, and Sea as co-counsel. The document stated that Garcia represented Noe and that Schultz agreed to Garcia acting as lead counsel in the case. The unsworn letter, allegedly written by trial witness Joe Robinson, stated that Robinson had lied at trial and that he had led the methamphetamine and marijuana conspiracies. Noe presented no support for his allegation that the investigator working for Mattox had produced substantial evidence in support of the split conspiracy defense.

In opposition, the government submitted Garcia's affidavit, which stated that Noe's family and friends had paid for Noe's legal fees. Further, the affidavit stated that Andrea Schultz had transferred property directly to Sea to pay for a large portion of the representation and "[a]ny additional monies [for Sea's representation of Schultz] were paid by the Schultz family through Garcia & Associates." The affidavit explained that Garcia's trial strategy was to attack and impeach the government's witnesses. Garcia averred that "[t]he discussion of prior counsel's investigation was considered, but a different trial strategy was pursued given the anticipated trial testimony that ultimately came forward."

The district court denied Noe's petition without holding a hearing. The court found that there was no joint representation, making it unnecessary for the court to conduct a detailed inquiry into the representation. The district court held that even if there was a conflict of interest or joint representation, Noe had knowingly and intelligently waived his right to conflict-free representation. The court expressed doubt that Noe had demonstrated an actual conflict and ultimately rejected Noe's claim based on actual conflict because he had not shown that his defense was adversely affected. The court found that Garcia's trial strategy was reasonable, concluding that a "point the finger" defense would have required Garcia to convince the jury that the government's witnesses were telling the truth about Schultz's involvement, but lying about Noe's role in the conspiracy. The court further rejected the contention that Garcia should have pursued a split conspiracy defense, noting that Noe had failed to present any evidence that the investigator working for Mattox had uncovered any information to support the defense. The court also found that the recorded jailhouse telephone calls established that Noe ordered "QPs" or "cutie pies"—meaning quarter pound quantities, allegedly of methamphetamine—which would be inconsistent with a split conspiracy defense. The court rejected Noe's argument that he was referring to quantities of marijuana. The district court also determined that Noe's failure to investigate and actual innocence claims were without merit.

Noe requested that his petition be reconsidered in light of newly discovered evidence. In support of his motion, Noe submitted a letter from Schultz's mother stating that she was involved in a sexual relationship with Garcia while he was representing Noe and an order of the Minnesota Supreme Court publicly reprimanding Garcia for professional misconduct in an unrelated case. The district court denied the motion, finding that the evidence was neither newly discovered nor persuasive. The district court also denied Noe's request for an expanded certificate of appealability.

In 2008, this court learned that an individual named Howard Kieffer had been practicing law in the federal courts without a license and requested that Kieffer respond to these allegations. Upon his failure to do so, Kieffer was removed from Noe's habeas case and new counsel was appointed to represent Noe.

Prior to the submission of this appeal, the government informed us that Garcia had been indicted for drug-related offenses in the District of Minnesota, was charged with sexual assault in Hennepin County District Court, and was under investigation by the Minnesota Office of Lawyers Professional Responsibility for misappropriating client funds and failing to pay employer withholding taxes.

## II.

An appeal from a district court's decision in a habeas claim of ineffective assistance of counsel presents a mixed question of law and fact. Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988) (en banc). We review the ineffective assistance issue *de novo* and the findings of underlying facts for clear error. Covey v. United States, 377 F.3d 903, 906 (8th Cir. 2004).

### A. Ineffective Assistance of Counsel

A defendant's claim that he was denied effective assistance of counsel because his attorney labored under a conflict of interest is considered under several different standards. To establish ineffective assistance of counsel, a defendant typically has to demonstrate that his counsel's performance was deficient and prejudicial. Strickland v. Washington, 466 U.S. 668, 693 (1984). A defendant who timely raises a claim of conflict of interest arising from joint representation is entitled to automatic reversal in the absence of a finding that no conflict existed. Mickens v. Taylor, 535 U.S. 162, 168 (2002). If the defendant did not raise the conflict of interest at trial, the defendant must show an actual conflict of interest that affected the adequacy of his

-6-

representation. <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348-49 (1980); <u>see also</u> <u>Ausler v. United States</u>, 545 F.3d 1101, 1104 (8th Cir. 2008).

### 1. Joint Representation

Noe alleges that Garcia engaged in joint representation when he designated himself as lead counsel for both defendants and hired his former associate to represent Schultz. Noe argues that because the trial court did not properly inquire into the joint representation after it was brought to its attention, automatic reversal is warranted.

A trial court does not have a constitutional obligation to inquire sua sponte into the propriety of joint representation. <u>Cuyler</u>, 446 U.S. at 346. The Federal Rules of Criminal Procedure, however, require a trial court to inquire into the possibility of a conflict whenever jointly charged defendants are represented by the same counsel or are represented by counsel who are associated in the practice of law. Fed. R. Crim. P. 44(c). The Rules require such an inquiry to avoid "the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to the effective assistance of counsel." <u>Id.</u> Advisory Committee Notes, 1979 Amendment.

The threshold question in this appeal is whether Garcia was engaged in joint representation. Federal Rule of Criminal Procedure 44(c)(1) explains that "[j]oint representation occurs when: (A) two or more defendants have been charged jointly . . . or have been joined for trial . . . ; and (B) the defendants are represented by the same counsel, or counsel who are associated in law practice." We conclude that the district court's determination that Noe and Schultz were represented by independent counsel was not clearly erroneous. While Garcia and Sea were previously associated in the practice of law, they were not associated at the time of trial and thus do not fall within the definition of joint representation. Although Noe and Schultz signed a joint

defense agreement, this was done to allow the attorneys to discuss the case between themselves, while maintaining attorney-client confidentiality. In <u>United States v. Kindle</u>, 925 F.2d 272, 275-76 (8th Cir. 1991), we declined to adopt the concept of "constructive" joint representation in a case in which two attorneys, representing co-defendants, held themselves out as solo practitioners, shared office space with common staff, and participated in a uniform defense strategy. Likewise here, we reject Noe's argument that the fee arrangement and designation of Garcia as lead counsel resulted in constructive joint representation. <u>See</u> <u>id.</u> at 276 ("The fact that counsel may have participated in a uniform defense strategy and acted jointly with codefendant's counsel does not mean there was 'constructive' joint representation or a conflict of interest.").

## 2. Fee Arrangement

Noe argues that Garcia's fee arrangement created a conflict of interest that deprived Noe of his right to the effective assistance of counsel. Noe urges us to apply the standard pronounced in <u>Cuyler v. Sullivan</u>. The Supreme Court has not extended the <u>Cuyler</u> standard that presumes prejudice to conflicts other than those arising from situations in which an attorney represents more than one defendant. <u>Mickens</u>, 535 U.S. at 174-75. Likewise, we have not yet determined whether <u>Cuyler</u>'s presumed prejudice analysis extends beyond conflicts arising from multiple representation. <u>See</u> <u>Covey</u>, 377 F.3d at 907; <u>Wemark v. Iowa</u>, 322 F.3d 1018, 1021(8th Cir. 2003). We need not decide whether <u>Cuyler</u> applies here, because Noe's ineffective assistance of counsel claim fails under either <u>Cuyler</u> or <u>Strickland</u>. <u>See</u> <u>Covey</u>, 377 F.3d at 907 (concluding that the petitioner would lose under either <u>Cuyler</u> or <u>Strickland</u> and declining to decide the applicability of <u>Cuyler</u>); <u>Caban v. United States</u>, 281 F.3d 778, 783-84 (8th Cir. 2002) (same).

<u>Cuyler</u> established that "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's

performance." 446 U.S. at 337, 348. This standard does not require an "inquiry into actual conflict as something separate and apart from adverse effect." Mickens, 535 U.S. at 172 n.5. "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Id. The effect must be actual and demonstrable, causing the attorney to choose to engage or not to engage in particular conduct. Covey, 377 F.3d at 908. To make such a showing, the defendant must "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Winfield v. Roper, 460 F.3d 1026, 1039 (8th Cir. 2006) (quoting Covey, 377 F.3d at 908) (internal quotations omitted).

Even accepting as true Noe's unsubstantiated contention that his attorney was paid by his co-defendant's family and friends, Noe's claim fails because he cannot demonstrate an adverse effect. Noe contends that Garcia's failure to pursue the split conspiracy defense or to "point the finger" at Schultz establishes an actual conflict, but he has not shown that these strategies were objectively reasonable. As the district court noted, the "point the finger" defense would have required Garcia to argue that the government's witnesses were telling the truth about Schultz's involvement, but lying about Noe's involvement. The split conspiracy defense theory is untenable because Noe failed to present proof of the "substantial evidence" that the investigator working for Mattox allegedly uncovered regarding this defense, and he has not demonstrated how such a strategy could plausibly have been pursued in light of the evidence presented at trial. Because these alternate strategies, the presentation of which would strain credulity in the absence of any supporting evidence, were not objectively reasonable, Noe has not established that he was denied the effective assistance of counsel under Cuyler.

Noe similarly fails to meet the ineffective assistance of counsel standard pronounced in Strickland v. Washington, which requires a petitioner to show that there is a reasonable probability that the outcome would have been different but for counsel's representation which "fell below an objective standard of reasonableness." 466 U.S. at 688. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. When assessing counsel's performance, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Noe has failed to show that Garcia's representation was deficient. Garcia's decision not to pursue a "point the finger" or split conspiracy defense was a reasonable trial strategy. See James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996) ("Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful."). Moreover, Garcia's fee arrangement was acceptable because Noe consented to third party payment and there is no evidence that the fee arrangement interfered with Garcia's independent judgment. Finally, Garcia's current disciplinary problems are by themselves insufficient to establish ineffective assistance of counsel, and Noe has failed to establish prejudice. See United States v. Watson, 479 F.3d 607, 611 (8th Cir. 2007) (declining "to extend a per se ineffective assistance of counsel rule to cases where the defendant was represented by a trained and qualified attorney, albeit one with licensing problems" and requiring a showing a prejudice to establish a claim). Accordingly, Noe's ineffective assistance of counsel claim fails under both the Cuyler standard and the Strickland standard.

Noe's argument that his constitutional right to effective assistance was violated by a possible conflict of interest also fails. See Cuyler, 446 U.S. at 350 (holding that

the lower court had inappropriately granted relief based on the existence of a possible conflict and explaining an actual conflict is required).

### 3. Waiver of Conflict of Interest

Even if there was a conflict of interest, Noe made a knowing, voluntary, and intelligent waiver of his right to conflict-free assistance of counsel. See United States v. Brekke, 152 F.3d 1042, 1045-46 (8th Cir. 1998). Noe affirmatively waived his conflict of interest claim by signing a written waiver and verbally assuring the trial court during an on-the-record inquiry that he had considered the possible conflict of interest that could arise from the funding by another individual of the cost of his legal representation. The written waiver stated that there had been "a full disclosure of the potential conflict" between Noe and Schultz. During the court's inquiry, Noe acknowledged his right to independent counsel and averred that he was comfortable with his relationship with his counsel. Noe was aware of the potential conflict of interest and decided to waive any such conflict. See United States v. Edelmann, 458 F.3d 791, 807 (8th Cir. 2006) (explaining that for a waiver to be valid the defendant must be apprized of the conflict, cognizant of the potential consequences of continuing with counsel, and aware of his right to obtain other counsel).

### B. Request for an Evidentiary Hearing

Noe argues that he is entitled to an evidentiary hearing to examine (1) the factual disputes regarding the feasibility of a spilt conspiracy defense, (2) the district court's acceptance of Garcia's affidavit at a time when Garcia was under investigation for ethics violations involving his fee agreements, and (3) the responsibility for the lack of evidentiary support stemming from Kieffer's appearance as counsel *pro hac vice* in the habeas proceeding in the district court.

An evidentiary hearing on a § 2255 petition may be denied if "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). We review the district court's decision to deny an evidentiary hearing for abuse of discretion. Koskela v. United States, 235 F.3d 1148, 1149 (8th Cir. 2001). "That standard is somewhat misleading, however, because review of the determination that no hearing was required obligates us to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo." Saunders v. United States, 236 F.3d 950, 952 (8th Cir. 2001). Thus, to determine if Noe is entitled to remand for an evidentiary hearing, we must review the validity of his ineffective assistance of counsel claims. Id.

First, the record conclusively resolves the factual dispute surrounding the split conspiracy defense. Noe's argument that the "cutie pies" he ordered while in custody were marijuana fails because it was established at trial that the amount Noe stated he would pay for the drugs was consistent with methamphetamine prices, not marijuana prices. Next, even if Garcia's affidavit were discredited, Noe would not be entitled to relief because Noe has presented no evidence beyond his own allegations to substantiate his claim of an actual conflict of interest. Finally, Noe's argument that, in light of Kieffer's deceptions, he is entitled to a hearing to ensure a full and fair adjudication of his claims fails because "[t]here is no Sixth Amendment right to constitutionally effective counsel in § 2255 proceedings." Abdullah v. Hedrick, 392 F.3d 957, 964 (8th Cir. 2004). "Where there is no constitutional right to counsel there can be no right to effective assistance of counsel." Pollard v. Delo, 28 F.3d 887, 888 (8th Cir. 1994). Because the petition, briefs, and record conclusively show that Noe is not entitled to § 2255 relief, the district court did not abuse its discretion in denying his petition without an evidentiary hearing.

### C. Expanded Certificate of Appealability

Finally, Noe asks that we expand the certificate of appealability to consider a variety of other claims, including those of actual innocence and a conflict of interest arising from Garcia's sexual relationship with Schultz's mother. "Although we have the discretion to expand the certificate of appealability, we exercise that discretion carefully." Winfield, 460 F.3d at 1040. We conclude that Noe has offered no reasons that would justify the exercise of that discretion, and thus we decline to expand the certificate.

### III.

The judgment is affirmed.

_____