# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1274

_____

United States of America

*Plaintiff - Appellee*

v.

Antonio Frausto, also known as Juan Antonio Frausto-Diaz, also known as
Antonio F. Ocampo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: March 25, 2014
Filed: June 13, 2014

_____

Before RILEY, Chief Judge, GRUENDER and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Antonio Frausto pled guilty to conspiring to distribute and possess with the
intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)

and 846. The district court[1] sentenced him to 240 months' imprisonment. His sentence was affirmed on direct appeal. Frausto petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, arguing that he was denied his Sixth Amendment right to effective assistance of counsel. The district court denied Frausto's petition without an evidentiary hearing. We granted a certificate of appealability, and Frausto appealed.

## I. Background

The facts underlying Frausto's conviction are set forth in our prior opinion, *United States v. Frausto*, 636 F.3d 992, 994-96 (8th Cir. 2011). We repeat those facts here only as necessary to the instant appeal.

During a series of meetings and secretly-taped telephone conversations between a confidential source employed by the Drug Enforcement Administration ("DEA") and Frausto and his co-conspirators, Frausto arranged for the sale of one pound of high-quality methamphetamine to the confidential source. This purchase took place on January 8, 2009, in Omaha, Nebraska. Frausto also arranged for two co-conspirators, one of whom was Frausto's nephew, Jose Rigoberto Frausto-Diaz ("Rigoberto"), to travel to Council Bluffs, Iowa to sell four additional pounds of methamphetamine to the confidential source's fictitious partner. On January 18, Frausto and his co-conspirators met with the confidential source at a restaurant in Omaha. Frausto and his co-conspirators arrived at the restaurant in a Ford Focus, which contained a hidden compartment to store illegal narcotics. Frausto and the confidential source remained at the restaurant while Frausto's co-conspirators drove the Ford Focus to an apartment complex in Council Bluffs. Frausto's co-conspirators were arrested at the apartment complex, and DEA agents seized the four pounds of

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

methamphetamine from the Ford Focus. Frausto was arrested soon thereafter in Omaha. DEA agents also obtained a search warrant to search a home in Omaha associated with the conspiracy and recovered a loaded handgun and approximately $60,000 in cash, including $23,500 of prerecorded DEA funds used in the January 8 transaction.

Frausto pled guilty to one count of conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine. At Frausto's sentencing hearing, DEA Special Agent Dustin Wernli testified about Frausto's role in the conspiracy, *see* USSG § 3B1.1. Special Agent Wernli testified that the confidential source and Frausto frequently spoke over the phone and that these conversations had been recorded. Special Agent Wernli also authenticated the recordings. A search of Frausto's phone revealed that two phone numbers, which were used by Special Agent Wernli and the confidential source, were programmed into the phone's directory. Rigoberto, Frausto's co-conspirator and nephew, testified that Frausto did not know about the methamphetamine but admitted that it was Frausto's voice on the recorded phone calls. After hearing the evidence, the district court sentenced Frausto to 240 months' imprisonment. On appeal, we affirmed Frausto's sentence. *Frausto*, 636 F.3d at 998.

Frausto filed this § 2255 petition, alleging that he was denied his Sixth Amendment right to effective assistance of counsel. The district court declined to grant an evidentiary hearing and denied the petition. On appeal, Frausto argues that he is entitled to an evidentiary hearing on three of his claims that his trial counsel was ineffective. First, Frausto argues that his trial counsel was ineffective for incorrectly advising him that Rigoberto would be unable to testify at Frausto's trial. Frausto asserts that if he had known that Rigoberto could have testified at trial, he would not have pled guilty. Second, Frausto argues that his attorney was ineffective for telling him that a jury would believe that he owned the Ford Focus when the DEA report showed that he did not own the Ford Focus. Frausto claims that had he known about

the DEA report he would not have pled guilty. Finally, Frausto argues his counsel was ineffective for not informing him that an expert using spectrographic voice analysis was available to analyze the voice in the phone calls. Frausto contends that he would not have pled guilty if his counsel had informed him about this technology.

## II. Discussion

An evidentiary hearing on a § 2255 petition may be denied if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). We review a district court's decision to deny an evidentiary hearing for abuse of discretion. *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010). However, when doing so, we must "look behind that discretionary decision to the court's rejection of the claim on the merits, which is a legal conclusion that we review de novo." *Id.* (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001)). Thus, to determine whether Frausto is entitled to an evidentiary hearing, we must review *de novo* the validity of his ineffective-assistance-of-counsel claims. *See id.*

To establish ineffective assistance of counsel, Frausto must demonstrate that his counsel's performance was both deficient and prejudicial. *See id.* at 789; *Strickland v. Washington*, 466 U.S. 668, 693 (1984). "In determining whether counsel's conduct was objectively reasonable, there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 689). In order to demonstrate prejudice where, as here, a petitioner challenges the validity of his guilty plea, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Nguyen*, 114 F.3d at 704; *Wilcox v. Hopkins*, 249 F.3d 720, 722 (8th Cir. 2001). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' That

requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1403 (2011) (citations omitted). Failure to demonstrate either deficient performance by counsel or prejudice therefrom is fatal to a petitioner's claim. *United States v. Lee*, 715 F.3d 215, 221 (8th Cir. 2013); *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

Assuming, without deciding, that Frausto has demonstrated that his counsel's performance was deficient, the record conclusively shows that Frausto is not entitled to relief. Frausto has failed to demonstrate that, absent the three alleged errors, there is a reasonable probability that he would not have pled guilty. In this case, "the 'prejudice' inquiry . . . closely resemble[s] the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Hill*, 474 U.S. at 59. Whether the alleged errors of Frausto's counsel prejudiced Frausto "by causing him to plead guilty rather than go to trial will depend . . . . in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id.*

First, Frausto alleges that had his counsel informed him that Rigoberto, his nephew and co-conspirator, could testify at Frausto's trial, Frausto would not have pled guilty. The record conclusively establishes that there is not a substantial probability that knowledge of Rigoberto's ability to testify at trial would have caused Frausto to proceed to trial. Rigoberto testified at Frausto's sentencing hearing. While Rigoberto claimed that Frausto did not know about the methamphetamine and that Rigoberto had received the methamphetamine from a different uncle, Rigoberto also identified Frausto's voice on the recorded calls. Because Frausto and the confidential source arranged for and discussed the methamphetamine sales in the recorded conversations, Rigoberto's testimony actually would have implicated Frausto in the conspiracy. Moreover, the evidence against Frausto was overwhelming and included: recorded conversations between Frausto and the confidential source arranging two methamphetamine sales; Special Agent Wernli's testimony authenticating the

recordings; the results of the search of Frausto's phone, which revealed that two phone numbers used by Special Agent Wernli and the confidential source were programmed into the phone's directory; and evidence that Frausto went to the restaurant with his co-conspirators in the Ford Focus used to store the four pounds of methamphetamine on January 18. Thus, Rigoberto's testimony at trial would have been unlikely to change the outcome of a trial. *See Chandler v. Armontrout*, 940 F.2d 363, 365 (8th Cir. 1991) (holding that, in light of the substantial evidence against him, the petitioner failed to demonstrate that his counsel's failure "to investigate . . . and verify the veracity" of a witness's testimony was prejudicial because it "would not have changed the end result of the petitioner's plea"); *see also Iron Wing v. United States*, 34 F.3d 662, 665 (8th Cir. 1994) (holding that petitioner could not demonstrate prejudice from counsel's failure to file a motion to suppress evidence where a plea agreement was prudent course for the petitioner because suppression of the evidence "would not have reduced the strength of the government's case"); *Harvey v. United States*, 850 F.2d 388, 402 (8th Cir. 1988) (holding petitioner's counsel were not ineffective for failing to develop defenses "in the face of overwhelming evidence of guilt"). Accordingly, we conclude that the record conclusively demonstrates that Frausto is not entitled to relief on his ineffective-assistance-of-counsel claim based on his counsel's failure to advise him that Rigoberto could testify at his trial.

Second, Frausto claims that if his counsel had informed him that the DEA report showed that Frausto did not own the Ford Focus rather than informing him that a jury would believe that he owned the vehicle, he would not have pled guilty. The record, however, conclusively demonstrates that even if Frausto had known about the DEA report, there is not a substantial probability that he would have insisted on proceeding to trial. As described above, the Government had ample evidence connecting Frausto to the conspiracy, including his recorded conversations with the confidential informant arranging the drug transactions. Additionally, the Government had uncontested evidence that Frausto arrived at the restaurant in the Ford Focus before the January 18 methamphetamine transaction. The fact that his counsel could

-6-

have presented evidence to the jury that Frausto did not own the Ford Focus is insignificant when compared to the evidence of Frausto's guilt, and thus, Frausto's non-ownership of the vehicle would have been unlikely to change the outcome of a trial. *See Iron Wing*, 34 F.3d at 665; *see also Harvey*, 850 F.2d at 402. Accordingly, the record conclusively establishes that he is not entitled to relief on this ineffective-assistance-of-counsel claim.

Finally, the record conclusively establishes that Frausto is not entitled to relief based on his counsel's failure to inform him about the availability of spectrographic voice analysis. Frausto does not allege that his counsel was ineffective for failing to consult an expert in spectrographic voice analysis; rather, he merely alleges that he would not have pled guilty if his counsel would have told him about the technology. Frausto's bare assertion that he would not have pled guilty is insufficient to allow for an intelligent assessment of the likelihood that Frausto would not have pled guilty and is far too speculative to warrant § 2255 relief. *See Rodela-Aguilar v. United States*, 596 F.3d 457, 462 (8th Cir. 2010); *Tran v. Lockhart*, 849 F.2d 1064, 1067 (8th Cir. 1988) (explaining that a petitioner must provide the court "with the type of specific facts which would allow . . . . an intelligent assessment of the likelihood that [a petitioner] would not have ple[]d guilty"). Moreover, where a petitioner alleges ineffective assistance of counsel based on his counsel's failure to consult and call an expert at trial, we require "'evidence of what a scientific expert would have stated' at trial in order to establish *Strickland* prejudice." *Rodela-Aguilar*, 596 F.3d at 462. Frausto has not provided this evidence, and we will not dispense with that requirement simply because Frausto alleges that knowledge of the existence of the technology would have caused him to insist on a trial. *See Hill*, 474 U.S. at 59 (explaining that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial" and "will depend in large part on a prediction whether the evidence likely would have changed the outcome of trial").

-7-

## III. Conclusion

Because the petition, briefs, and record conclusively show that Frausto is not entitled to § 2255 relief, the district court did not abuse its discretion by denying his petition without an evidentiary hearing.  We affirm.

_____