# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2428

_____

Patrick Joseph Kiley

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 17, 2018
Filed: January 31, 2019

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Patrick Joseph Kiley moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, claiming that he had received ineffective assistance of counsel at trial. The district court denied the motion.[1]  We affirm.

## I.  Background

Following an eight-week trial, Kiley was found guilty of twelve counts of mail and wire fraud under 18 U.S.C. §§ 2, 1341, and 1343, one count of conspiracy to commit mail and wire fraud under 18 U.S.C. § 1349, and two counts of money laundering under 18 U.S.C. §§ 2 and 1957. We affirmed Kiley's conviction and 240-month sentence on direct appeal. See United States v. Beckman, 787 F.3d 466, 499 (8th Cir. 2015).

The charges arose from a partial Ponzi scheme (the currency program) started by Trevor Cook in 2006, in which Cook and Kiley conspired with others to steal more than $193 million from investors. When the conspiracy began to unravel in 2009, investors filed a civil lawsuit against several of the co-conspirators (the Phillips litigation). Henry Nasif Mahmoud was retained to represent Kiley and forestall his being named as a defendant in that litigation. As a retainer, Kiley caused $100,000 to be wired to Mahmoud's account at a bank in Naperville, Illinois. The $100,000 transfer, consisting of victims' stolen funds, served as the basis for one of Kiley's money laundering convictions. Following Kiley's indictment in 2011, Mahmoud began to represent him in his criminal proceedings.

Before trial, the government moved for inquiry, alleging that Mahmoud suffered from three conflicts of interest, two of which concerned Mahmoud's prior representation of two individuals, Duke Thietje and Stephen Nortier, who would be

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

called as witnesses at trial. The government also suggested that Mahmoud himself might be a necessary witness at trial because of his receipt of the $100,000 retainer. Kiley opposed the government's motion. After a hearing, the district court determined that Mahmoud was not a necessary witness, but it required Kiley to execute a waiver of the other two conflicts if he wished to be represented by Mahmoud. Kiley waived the conflicts and was represented at trial by Mahmoud and local counsel.

At trial, the government presented evidence that Mahmoud was the recipient of Kiley's laundered funds. A government investigator explained how the money had traveled in interstate commerce when it was wired from an account composed entirely of victim funds to Mahmoud's Illinois bank. Mahmoud himself later mentioned the retainer when he asked a witness about Kiley's mental condition "[i]n July of 2009, *about the time you sent that wire to me*."

The government also produced emails in which Kiley mentioned Mahmoud's name to an investor. The government introduced during Duke Thietje's testimony an email thread from 2006 in which Thietje asked Kiley for information about his investments, to which Kiley responded that he was waiting to hear back from Mahmoud regarding Thietje's inquiries. The jury subsequently heard testimony from three attorneys that they had immediately recognized the currency program as fraudulent after reviewing its operations in 2008.

Following Kiley's convictions, Kiley and Mahmoud parted ways and new counsel was appointed for Kiley at sentencing. Kiley thereafter began asserting that he had received ineffective assistance of counsel because Mahmoud's receipt of laundered funds and entanglement in the conspiracy subjected him to potential liability, creating a conflict of interest. On direct appeal, we concluded that the district court's failure to notice and address *sua sponte* Kiley's previously unraised

conflict-based challenge did not violate Kiley's Fifth Amendment due process rights. See Beckman, 787 F.3d at 490.

Kiley then filed this § 2255 motion alleging that he was deprived of his Sixth Amendment right to effective representation by conflict-free counsel. Kiley argued that Mahmoud's potential liability caused his and Mahmoud's interests to diverge prior to trial and that the conflict adversely affected Mahmoud's representation, particularly when the jury learned that Mahmoud had received stolen funds. During a hearing on the motion, the district court heard testimony from a number of witnesses, including a criminal defense expert and Mahmoud. In denying Kiley's motion, the court found no evidence of wrongdoing by Mahmoud and insufficient evidence to show that Mahmoud had exposed himself to liability by accepting the retainer. Finding Mahmoud's testimony credible, the court concluded that Mahmoud had neither actual nor constructive knowledge that the currency program was fraudulent when he accepted Kiley's retainer in 2009. The court found that Mahmoud's credibility before the jury was not harmed and determined that Kiley's representation thus had not been adversely affected.

## II. Discussion

We review the denial of Kiley's § 2255 claim as a mixed question of law and fact, affirming the district court's factual findings absent clear error and considering *de novo* its legal conclusions. Noe v. United States, 601 F.3d 784, 789 (8th Cir. 2010). "[A] defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). "This standard does not require an 'inquiry into actual conflict as something separate and apart from adverse effect.'" Noe, 601 F.3d at 790 (quoting Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002)). "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Mickens, 535 U.S. at 172 n.5. Before the district

court, Kiley argued that Mahmoud's potential liability created a conflict of interest. On appeal, we will examine whether the conflict adversely affected the adequacy of his representation of Kiley at trial. We conclude that it did not.

To show adverse effect, a defendant must show that his attorney failed to pursue a reasonable alternate defense strategy because of the conflict. See Noe, 601 F.3d at 790. We have also said in a concurrent representation case that when a conflict of interest causes both the attorney as well as the client to look less credible before the jury, the conflict has a Cuyler-type adverse effect. See Dawan v. Lockhart, 31 F.3d 718, 722 (8th Cir. 1994). Kiley argues that both theories apply in this case.

He first contends that Mahmoud should have pursued alternate defense strategies at trial. Specifically, he asserts that Mahmoud should either have cross-examined Thietje about the email thread in which Mahmoud was mentioned or pursued a different defense against the money-laundering charge at issue. Mahmoud testified at the § 2255 hearing that he did not cross-examine Thietje because he thought it would elicit testimony harmful to Kiley. The district court found this testimony to be credible. Because Mahmoud's strategy was reasonable in the circumstances, Kiley has not shown an adverse effect. See Caban v. United States, 281 F.3d 778, 786 (8th Cir. 2002) ("[I]f a reasonable attorney would have adopted the same trial strategy absent a conflict, Caban cannot show McGlennen's performance was *adversely* affected by that conflict." (emphasis in original)). The district court also found that the evidence of Kiley's guilt on the money-laundering charge was "overwhelming," and Kiley's expert witness testified that he would not have pursued the theory which Kiley now advances. Because the district court's findings are supported by the record and are not clearly erroneous, see Johnson v. Norris, 207 F.3d 515, 520 (8th Cir. 2000), Kiley has failed to establish that the alternate defense strategy he proposes was objectively reasonable. See Noe, 601 F.3d at 791 ("Because these alternate strategies, the presentation of which would strain credulity in the

-5-

absence of any supporting evidence, were not objectively reasonable, Noe has not established that he was denied the effective assistance of counsel under Cuyler.").

Kiley's primary argument, however, is that Mahmoud's very presence at trial adversely affected him after Mahmoud was allegedly implicated in the charged criminal conduct. Relying on Dawan, he asserts that Mahmoud's potential involvement diminished both Mahmoud's and his credibility and thus satisfied Cuyler.[2] In Dawan, Stout and Dawan were charged with burglary. 31 F.3d at 719. Both were represented by the same attorney. Id. Stout pleaded guilty and provided a sworn statement implicating Dawan. Id. When Stout thereafter testified at Dawan's trial, however, he denied Dawan's involvement. Id. at 720. On cross-examination, Stout admitted that he had lied under oath in his statement and, at the prosecution's request, identified Dawan's attorney as his own counsel. Id. To drive home the point of counsel's earlier representation of the now-discredited Stout, the prosecutor physically pointed to defense counsel's presence in the courtroom. Id. at 722. On redirect, defense counsel merely asked, "But your testimony here today's true?" Id. at 720.

We held that Dawan had shown an adverse effect "even if counsel's decision not to question Stout about the prior statement was, in fact, purely a matter of trial strategy, and even if that decision had nothing to do with the conflict of interest." Id. at 722. Because the prosecutor showed the jury that "the same attorney currently representing Dawan had also represented the witness who changed his story[,] . . . [t]he prosecutor's comments made Dawan's attorney look less credible and, by extension, made Dawan look less credible as well." Id.

---

[2]Kiley argues that to avoid this adverse effect, Mahmoud should have pursued the reasonable alternate strategies of withdrawing as counsel or seeking a protective stipulation. Because we conclude that Kiley has failed to show any adverse effect, we need not offer any opinion regarding that argument.

We have not applied Dawan to a case of sole-client representation. We decline to extend Dawan here because Kiley has not shown that Mahmoud's credibility was diminished in the jury's eyes. In Dawan, the jury could reasonably infer that the defense attorney had suborned perjury. That inference went to the very heart of the attorney's credibility, and, as the court held, by extension to the client's credibility. In this case, the jury learned only that Mahmoud had been paid with funds that were later determined to have been stolen, which carried no hint of illegality absent Mahmoud's knowledge of the nature of the funds at the time he received them. See 18 U.S.C. § 1957. The district court's finding that Mahmoud did not know that the funds were stolen is not clearly erroneous in light of the testimony presented during the § 2255 hearing. Likewise so with respect to the district court's finding that there was insufficient evidence to support a reasonable inference that Mahmoud knew, or should have known, that the funds at issue were illegitimate.

Kiley argues that the court's underlying factual findings were clearly erroneous and that it incorrectly applied the law when distinguishing Dawan. He notes that Mahmoud's name was mentioned in the Thietje emails and argues that the jury could have inferred on that basis that Mahmoud was entangled with the currency program itself. The Thietje emails are not sufficient to show Mahmoud's entanglement, however, because they reveal nothing nefarious about Mahmoud's activities. The emails show Kiley claiming to correspond with Mahmoud regarding Thietje's investment. The record nevertheless reveals an innocent explanation for Kiley's mentioning Mahmoud in correspondence with Thietje—Mahmoud had represented Thietje in a separate legal matter, which was reflective of a prior relationship between the two. Moreover, the government did not offer the emails as standalone evidence of unlawful activity. Thietje's money was invested in an entity that Kiley admits was "an apparently legitimate business unconnected to Cook's scheme" that went bankrupt. The government conceded at trial that Kiley himself did not know that the entity would go bankrupt. Therefore, even if the jury assumed that the emails showed Mahmoud's involvement with Thietje's investment, that involvement alone would not

have implicated Mahmoud in the conspiracy. The district court thus did not clearly err by finding the emails insufficient to raise an inference that Mahmoud was entangled with the conspiracy.

Kiley also argues that the jury could have inferred Mahmoud's knowledge that the retainer funds were stolen from the testimony of the three attorneys who had reviewed the operations of the currency program in 2008 and immediately recognized it as fraudulent. According to Kiley, the jury could have "reasonably inferred that . . . Mahmoud reviewed some of the same documents and asked some of the same questions." Appellant's Br. 43. Kiley further contends that Mahmoud's knowledge could have been inferred from the allegations of fraud in the Phillips litigation, which were widely publicized before Mahmoud accepted his retainer.

Kiley's suggestion that the jury could have assumed that Mahmoud had reviewed the same records reviewed by the testifying attorneys fails for want of any trial testimony regarding Mahmoud's review of any records associated with the currency program. Kiley also seems to argue that if the jury knew that Mahmoud was aware of the fraud allegations against Kiley, then it would have assumed that Mahmoud knew that the retainer money was stolen. This argument is belied by the failure of the district court, the attorneys, and the parties themselves to notice the issue Kiley now claims was apparent to the jury. The district court thus did not commit clear error when it found that the jury was not presented with sufficient evidence from which it could reasonably have inferred that Mahmoud knew, or should have known, that the retainer money was illegitimate.

Because Kiley has not met the Cuyler standard of actual conflict, we affirm the district court's judgment.

_____