# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1309

_____

Terry Gale Plunk,

*Petitioner - Appellant*,

v.

Ray Hobbs,

*Respondent - Appellee.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: January 15, 2014
Filed: August 14, 2014

_____

Before RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, BYE, MELLOY, SMITH, COLLOTON, GRUENDER, BENTON, SHEPHERD, and KELLY, Circuit Judges, En Banc.

_____

COLLOTON, Circuit Judge.

Terry Gale Plunk, an Arkansas prisoner, petitioned for a writ of habeas corpus in federal district court, pursuant to 28 U.S.C. § 2254. A magistrate judge[1] held an evidentiary hearing and recommended denial of the petition. The district court[2] adopted the recommended findings and disposition, dismissed the petition, and granted a certificate of appealability on all issues. Plunk appealed, and a panel of this court vacated the judgment of the district court and remanded for further proceedings. *Plunk v. Hobbs*, 719 F.3d 977 (8th Cir. 2013). We granted the State's petition for rehearing *en banc* and now affirm the judgment of the district court.

I.

Law enforcement officers in Arkansas received multiple reports in April 2006 that Plunk possessed a large quantity of methamphetamine. One evening that month, officers attempted to effect a traffic stop while Plunk was driving his truck. Plunk refused to halt and led officers on a high-speed chase—much of it recorded on video—during which Plunk drove through stop lights, rammed police vehicles, wove through a crowded parking lot, and threw baggies of methamphetamine out of the truck.

Plunk was arrested and charged with multiple offenses related to the chase and his possession of methamphetamine and firearms. Officers discovered more methamphetamine and evidence of drug activity when they executed a search warrant at the residence Plunk shared with his girlfriend, Deborah Devries. Police arrested

---

[1]The Honorable Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas.

[2]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

Devries for offenses related to her possession of drugs and firearms and attempts to destroy evidence.

After Plunk was released pending trial, he was arrested again in August 2006 while attempting to deliver methamphetamine from his vehicle to an undercover officer. As police officers approached Plunk, he began to back out of a parking space, causing one officer to believe that Plunk was going to hit him. That officer shot Plunk in the shoulder. Plunk was arrested and charged with attempted capital murder of the police officer, as well as multiple drug offenses.

Plunk retained Phillip Moon to represent him in both the April and August cases. Devries was initially represented by a public defender on her April case, but Plunk later hired Moon to represent her as well. According to Moon, he talked with Plunk at length about the dangers of joint representation and also discussed the topic with Devries. App. 491-92. Plunk disputes this point, and the district court deemed it unnecessary to make a definitive factual finding. R. Doc. 183, at 43.

While Moon represented both Plunk and Devries, he negotiated a "package plea deal" with prosecuting authorities to resolve all charges against Plunk and Devries. Under the proposed agreement, Plunk would plead guilty to all of the pending charges, including the attempted capital murder charge, and receive a life or life-equivalent sentence, while Devries would plead guilty to drug charges and receive a sentence of probation. When Moon presented the offer to Plunk, he promptly rejected it, because he refused to accept any plea offer that required a plea of guilty to attempted capital murder. The cases remained set for trial.

Moon thought the April case involving Plunk's video-recorded flight would be difficult to defend, but he believed the attempted capital murder charge from August was "very defensible." The attempted murder case was tried first, in July 2007. Moon presented a defense that Plunk did not attempt to murder the police officer,

because his poor eyesight and obstructed view from inside the car prevented him from seeing the officer. The jury acquitted Plunk of the attempted capital murder charge but convicted him on two drug trafficking charges.

At a sentencing hearing before the same jury, the prosecution prepared to present the video recording of the April police chase. Moon feared the jury—upon viewing the aggravated circumstances of Plunk's flight from police—would regret rendering its acquittal and sentence Plunk to the maximum sentence available on the drug trafficking charges. Moon approached the prosecutor and negotiated a plea agreement to resolve both of Plunk's cases. The agreement, which Plunk accepted, provided for seventy-two years of imprisonment on the charge of possession of methamphetamine with intent to distribute and shorter concurrent sentences to resolve the remaining charges. Plunk waived his right to appeal the convictions and sentences, and he did not seek state post-conviction relief.

For her part, Devries pleaded guilty in January 2008 to charges arising from her arrest in April 2006 and to additional charges of furnishing contraband to Plunk while he was in jail. The court sentenced her to 120 days in jail and to concurrent 10-year and 1-year sentences of probation.

In July 2008, Plunk petitioned for a writ of habeas corpus, alleging that he received ineffective assistance from Moon. The district court held an evidentiary hearing, assumed without deciding that Plunk could overcome defenses of procedural default and statute of limitations, and denied Plunk's claims on the merits. Plunk raised four points on appeal, and a panel of this court reversed and remanded on one ground without reaching the other three.

We granted rehearing *en banc*. Because Plunk did not exhaust his claims in state court, the claims have not been adjudicated on the merits in state court proceedings, and the standards of 28 U.S.C. § 2254(d) do not apply. In that

-4-

circumstance, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. Like the district court, we resolve Plunk's claims on the merits, *see* 28 U.S.C. § 2254(b)(2), and we deem it unnecessary to address the statute of limitations and procedural default.

## II.

## A.

We address first the argument that drew the attention of the three-judge panel. Plunk argues that attorney Moon labored under an actual conflict of interest when he jointly represented both Plunk and Devries. Plunk contends that Moon's conflict affected the adequacy of his representation and that he is entitled to relief without any additional showing of prejudice under the rule of *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980).

*Sullivan* provides that we presume prejudice when a conflict of interest arising from multiple representation adversely affected counsel's representation. The presumption arises because when joint representation of conflicting interests has an adverse effect on counsel's performance, it is difficult "to measure the precise harm arising from counsel's errors." *Mickens v. Taylor*, 535 U.S. 162, 168 (2002). A rule requiring a defendant to show specific prejudice "would not be susceptible of intelligent, evenhanded application." *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978). When a defendant shows that counsel refrained from pursuing a particular strategy or tactic on his behalf because of loyalty to another extant client, there is no effective way to determine what would have happened if counsel had performed without a conflict of interest. Especially in the context of plea negotiations, "to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible," and an inquiry into harmlessness of the error would require "unguided speculation." *Id.* at 491.

-5-

To trigger the presumption of prejudice, however, a petitioner who did not object at trial must show that a conflict of interest "significantly affected counsel's performance." *Mickens*, 535 U.S. at 173. The purpose of the *Sullivan* rule "is not to enforce the Canons of Legal Ethics," *id*. at 176, and there is no *per se* rule that a defendant who is advised by the same attorney as a co-defendant is deprived of his right to effective assistance of counsel under the Sixth Amendment. *Holloway*, 435 U.S. at 482. A habeas petitioner invoking *Sullivan* must "identify a plausible alternative defense strategy or tactic that [his] defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004) (internal quotations omitted). If a petitioner claiming ineffective assistance of counsel cannot show that a conflict of interest significantly affected counsel's performance, then he must establish deficient performance and prejudice under the ordinary standards of *Strickland v. Washington*, 466 U.S. 668 (1984).

Plunk argues that Moon was acting under a conflict of interest when he negotiated a package plea agreement for both Plunk and Devries. He cites two ways in which the conflict adversely affected Moon's performance in the negotiations.

First, Plunk contends that Moon's conflict of interest prevented him from seeking a better plea agreement for Plunk alone. A conflict of interest may adversely affect counsel's representation when it prevents an attorney from exploring potential plea opportunities, but only when "a lesser charge or a favorable sentencing recommendation would be acceptable" to the prosecution. *Holloway*, 435 U.S. at 489-90. If the prosecutor would not have been receptive to a more favorable plea bargain, then there is no basis to conclude that any conflict of interest harmed the lawyer's advocacy. *Burger v. Kemp*, 483 U.S. 776, 785-86 (1987).

-6-

After an evidentiary hearing, the district court concluded that Moon's joint representation did not adversely affect Plunk's defense during the negotiation of the package plea agreement. The district court found that "all . . . proposals by the prosecution would have required Petitioner to plead guilty to attempted capital murder," but that Plunk "refused to take any plea deal that involved pleading guilty to the attempted capital murder." In other words, Moon's potential conflict of interest did not prevent Moon from negotiating a more favorable agreement for Plunk, because no better deal was available.

The record supports the district court's conclusion. When asked why the package plea agreement never happened, Prosecutor Bradford testified that Moon asked for a plea offer that would not require Plunk to plead guilty to attempted capital murder, but that "the State was not in a position to [*nolle pros*] or to not include that charge in the plea negotiations." App. 560. He explained that the inability to reach an agreement on the attempted murder charge "was ultimately what led to us having to try the case." *Id*. Moon explained that Plunk did not feel the attempted murder charge was justified, and that avoiding a conviction on that offense was most important to Plunk. *Id*. at 442. But Moon also perceived that the State was "like a dog with rabies" in its prosecution of Plunk, and that attempted murder was the most important charge to prosecutors. *Id*. at 444. The parties thus reached loggerheads when the State insisted on a conviction for attempted murder and Plunk refused to plead guilty to that offense. Moon's representation of Devries did not adversely affect his negotiations on behalf of Plunk, because Plunk was unwilling to plead guilty to attempted murder, and the State was unwilling to forego that charge.

In concluding that Moon labored under a conflict of interest that adversely affected his representation, the dissenting opinion asserts that Plunk did not accept the package plea agreement because Moon was having difficulty getting Plunk to understand the proposal. We are presented, however, with a factual finding of the district court that Plunk rejected the plea agreement because that proposal, and all

-7-

others, would have required him to plead guilty to attempted capital murder. We may reject the finding only if it is clearly erroneous, after allowing "for the advantages possessed by the trial court in appraising the significance of conflicting testimony." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 336 U.S. 271, 275 (1949). The evidence cited by the dissent does not leave us with a "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The district court's finding is supported by ample evidence, including Bradford's testimony described above and Plunk's own testimony that he rejected the package plea agreement because he refused to accept any agreement that required him to plead guilty to attempted capital murder. App. 354, 372. That the record includes arguably conflicting testimony does not make the district court's finding clearly erroneous.

The dissent also reasons that Moon's conflict of interest prevented him from attempting to negotiate an agreement calling for a lesser punishment than the 99-year prison term specified in the proposed package agreement. The suggestion is that Prosecutor Bradford would have been willing to consider mitigating evidence from a competency report or to entertain offers to cooperate in a drug trafficking investigation. But the prosecutor never said the State would have been willing to consider dropping the attempted capital murder charge, and Plunk simply refused to plead guilty to that charge. It matters not whether Moon might have been able to negotiate a lesser sentence for a guilty plea to attempted capital murder, because his client professed innocence and was unwilling to plead guilty to that offense. Prosecutor Bradford, moreover, testified that while he is willing to consider extenuating circumstances disclosed in a defendant's forensic report on competency, he did not see "anything" in Plunk's report that he "would deem to be mitigating." App. 591. As for potential cooperation, the district court found—with ample support in the record—that no matter what Moon might have attempted to negotiate, Plunk failed to demonstrate he actually would have been willing to cooperate with law enforcement. R. Doc. 183, at 67-68.

-8-

Second, Plunk asserts that Moon's advice to accept the package plea agreement was by itself sufficient to show an adverse effect on Moon's performance, because a conflict-free attorney would not have recommended the agreement that Plunk rejected. To accept this contention would expand the rule concerning presumption of prejudice. Unlike Plunk's case, the published authorities in this area concern whether a defendant is entitled to relief when he *followed* advice of a conflicted attorney, either to plead guilty or to decline a plea agreement. *See, e.g.*, *Berry v. United States*, 293 F.3d 501, 504 (8th Cir. 2002); *Hall v. United States*, 371 F.3d 969, 974 (7th Cir. 2004); *Thomas v. Foltz*, 818 F.2d 476, 483 (6th Cir. 1987). If a defendant follows counsel's recommendation, foregoes an alternative line of defense, and shows that the attorney's advice was influenced by a conflict of interest, then prejudice may be presumed.

Plunk argues that even where a defendant immediately *rejects* counsel's advice to plead guilty, and the litigation then proceeds in a different direction, he is entitled to a presumption of prejudice with respect to everything that follows. We find no authority to support this proposition, and we decline to adopt it. *Sullivan*'s presumption of prejudice adheres because a conflict of interest significantly affected counsel's performance, and the effect on performance could have affected the outcome of the proceedings, but it is impractical to measure the harm resulting from counsel's errors. In Plunk's scenario, however, it is clear that there was no harm whatever: Plunk immediately rejected Moon's recommendation to plead guilty. Moon then pursued an alternative defense strategy that Plunk preferred. It is not necessary to speculate about the impact of Moon's advice to plead guilty on his defense of the cases, because the effect was zero. The *Sullivan* prophylactic rule is designed to protect a defendant when it is impossible to reconstruct what might have occurred without counsel's conflict of interest. To extend that rule to Plunk's situation would grant an unwarranted windfall to a defendant who plainly suffered no harm as a result of advice that he promptly rejected.

We therefore reject Plunk's contention that Moon's advice to accept the package plea agreement justifies a presumption of prejudice and relief under the Sixth Amendment. The district court correctly dismissed this claim.

B.

Plunk also suggests that Moon's conflict of interest caused Moon to forego an investigation of Plunk's mental defects that could have been used in plea negotiations and court proceedings. Plunk alleges that a competent investigation would have uncovered evidence of his mental retardation, as worsened by a traumatic brain injury he suffered in 1999. He contends that evidence of his mental problems would have supported (1) an affirmative defense that he lacked the capacity to follow the law, (2) a claim of incompetence to stand trial, and (3) an argument for leniency in plea negotiations or sentencing. Plunk theorizes that Moon did not look for such evidence because he was attempting to emphasize Plunk's culpability in order to downplay Devries's.

The district court rejected Plunk's theory that Moon sought to shift liability from Devries to Plunk, finding "no proof that this took place." Plunk relied on the statement of a prosecutor in the second case involving Devries—in which she was prosecuted for furnishing prohibited articles to Plunk in jail—that Moon had "emphasized greatly" that Devries had been "led astray" by Plunk. Referring to this colloquy, however, the district court found that Plunk's "sole evidence" about Moon's shifting culpability to Plunk came during a hearing that occurred *after* Plunk's case was already final, and that this evidence could not establish that Moon's performance was adversely affected during Plunk's case. The district court found "no other evidence in the record" of Moon's attempting to emphasize Plunk's culpability or minimize Devries's.

Plunk asserts that there was other evidence: Moon's failure to emphasize Plunk's intellectual disability was itself proof of an adverse effect on representation, because an objective observer could conclude that Moon was acting to preserve the blame-shifting argument for Devries to use in her later case. To show the required adverse effect, however, Plunk must establish "that the conflict caused the attorney's choice," and "that the defense counsel's failure to pursue that strategy or tactic was linked to" the conflict. *Covey*, 377 F.3d at 908 (internal quotations omitted); *see also Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir. 2006). He must show that the adverse effect on his case was "actual and demonstrable," not merely "abstract or theoretical." *Covey*, 377 F.3d at 908 (internal quotation omitted). Because Plunk offered only theoretical ways in which the conflict could have caused Moon's alleged deficiency, we find no error in the district court's conclusion that Plunk "simply failed to prove" this claim.

Alternatively, Plunk argues that Moon's failure to present evidence of intellectual disability was ineffective assistance under the *Strickland* standard. The district court found that Plunk does suffer from some mental impairment that could have been relevant to his defense, and that evidence could have been available about his difficulty in school, difficulty completing ordinary life tasks, and traumatic brain injury. The district court thought Moon's failure to investigate Plunk's impairments beyond obtaining one psychiatric evaluation fell below the *Strickland* "objective standard of reasonableness," but concluded that Plunk failed to show prejudice.

We find it unnecessary to endorse or reject the conclusion that Moon's performance fell below the range of competence demanded of attorneys in criminal cases. Assuming deficient performance for the sake of analysis, we agree with the district court that Plunk has not shown prejudice.

On Plunk's claim that he would have been found incompetent to stand trial, we agree with the district court that any additional evaluations were likely to reach the

-11-

same result as the first one. The psychiatrist's report determined that Plunk understood the legal system and the charges against him. Plunk was no stranger to the legal system, and he invoked his right to remain silent in several interrogations. The district court found that Plunk did have the ability to "have meaningful discussions about all the facts" early in trial preparation, that he was able to assist in the fact-intensive trial preparation of the defense on the attempted murder charge, and that Plunk's own testimony at the hearing showed his assistance in the defense. Although Plunk's expert raised "concerns" about Plunk's competency at the time of trial, he did not offer an opinion on the issue. Plunk thus did not carry his burden to show a reasonable probability that he would have been found incompetent to stand trial.

We also agree with the district court that Plunk did not show prejudice in plea negotiations or at sentencing arising from Moon's failure to develop mitigating mental evidence. The prosecutor testified that due to the seriousness of the charges, only "compelling" mitigating evidence would have affected his plea offers, and Plunk's proffered evidence does not rise to that level. As to sentencing, if Plunk had eschewed the plea agreement reached after the acquittal on attempted murder and proceeded to sentencing on the drug trafficking charges of which he was convicted, the result may well have been worse. Regardless of evidence on Plunk's mental capacity, a jury would have seen video evidence of Plunk's reckless flight from officers in April 2006 and learned of his extensive criminal history. Counsel aptly recognized a substantial risk that the jury would regret acquitting Plunk on the attempted murder charge and choose life imprisonment as punishment. Plunk has not demonstrated a reasonable likelihood that developing evidence of mental deficiency and proceeding before a jury would have improved the outcome.

C.

Plunk also claims that Moon's joint representation adversely affected his representation of Plunk because Moon's divided loyalty led him to ask Devries to testify against Plunk. Devries averred that she saw Moon speaking with a prosecutor, and that Moon then told her that the prosecutor wanted her to testify against Plunk. Moon disputed this account and testified that neither he nor the prosecutor ever asked Devries to testify against Plunk. The prosecutor further explained that he would never ask a co-defendant to testify against another when both were represented by the same counsel.

The district court found that "the request did not occur." This credibility finding is not clearly erroneous. Plunk argues that the district court misunderstood the issue and focused incorrectly on whether *the prosecutor* sought Devries's testimony when the claim is that *Moon* suggested that she implicate Plunk. But Devries's statement was that Moon told her *the prosecutor* wanted to know if she would testify against Plunk. So when the district court credited the prosecutor's denial, it was appropriate for the court also to discount Devries's testimony that Moon relayed a request from the prosecutor.

D.

Plunk contends finally that Moon rendered ineffective assistance under *Strickland* by failing to advise him accurately about when he would be eligible for parole under the plea agreement that Plunk accepted. At the time, the Supreme Court of Arkansas had ruled that counsel had no constitutional duty to inform a client about the specifics of parole eligibility, *Buchheit v. State*, 6 S.W.3d 109, 111-12 (Ark. 1999), and this court held that the state court's decision did not involve an unreasonable application of clearly established federal law. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006). Although some courts subsequently have extended the

-13-

reasoning of the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010)—concerning advice about deportation consequences—to require advice about parole eligibility, *e.g.*, *Commonwealth v. Pridham*, 394 S.W.3d 867, 878 (Ky. 2012); *Ex Parte Moussazadeh*, 361 S.W.3d 684, 690-91 (Tex. Crim. App. 2012), any such extension of the Sixth Amendment would be a new rule of constitutional law, inapplicable on collateral review. *See Chaidez v. United States*, 133 S. Ct. 1103 (2013) (holding that *Padilla* does not apply retroactively).

In any event, the district court also found that even if Moon had advised Plunk that he would be eligible for parole in eighteen years, rather than the five years that Plunk understood, Plunk would not have rejected the plea agreement and opted for sentencing by a judge or jury. The court's credibility finding that Plunk's "self-serving, after-the-fact statements" were inadequate is not clearly erroneous. Having failed to show a reasonable probability that different advice about parole eligibility would have changed the outcome of the proceeding, Plunk cannot show prejudice. *See Hill v. Lockhart*, 474 U.S. 52, 60 (1985).

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

SMITH, Circuit Judge, with whom BYE, MELLOY, and KELLY, Circuit Judges, join, dissenting.

I respectfully dissent. I find merit in Plunk's contention that Moon labored under an actual conflict of interest that adversely affected his representation. *See Sullivan*, 446 U.S. at 348. Because the district court failed to address whether Plunk waived the right to effective assistance of counsel in hiring Moon to represent Devries and himself, I would reverse the district court and remand with instructions

-14-

to consider this issue at an evidentiary hearing. *See United States v. Unger*, 665 F.2d 251, 256 (8th Cir. 1981).

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 348 (footnote omitted). "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id*. at 349–50. A defendant must demonstrate "that his counsel actively represented conflicting interests" in order to "establish[ ] the constitutional predicate for his claim of ineffective assistance." *Id*. at 350. In this case, Moon and Prosecutor Bradford negotiated an agreement in which the State would offer a "package" plea deal to Plunk and Devries in which Devries would receive ten years' probation in exchange for Plunk serving a 99-year sentence pursuant to plea of guilty to all of the *Plunk 1* and *Plunk 2* offenses.[3] The State's offer of probation to Devries was *entirely*

---

[3]In April 2006, authorities charged Plunk in Boone County Circuit Court Case No. CR 2006–129–3 ("*Plunk 1*") with the following offenses: (1) possession of methamphetamine with intent to deliver; (2) simultaneous possession of drugs and firearms; (3) being a felon in possession of a firearm; (4) fleeing in a vehicle; (5) three counts of criminal mischief (damage to police vehicles); (6) possession of drug paraphernalia; (7) aggravated assault; (8) possession of marijuana; and (9) being subject to a sentencing enhancement due to a prior drug-related conviction.

In August 2006, while out on bond, police arrested Plunk during his attempt to deliver methamphetamine to an undercover police officer. Officers discovered 34.4 grams of methamphetamine in Plunk's socks. In Plunk's car they discovered 338.9 grams of methamphetamine, a glass pipe, digital scales, and plastic baggies. Plunk was subsequently charged in Boone County Circuit Court Case No. CR 2006–213–3 ("*Plunk 2*") with the following: (1) criminal attempt to commit capital murder; (2) possession of methamphetamine (a total of 373.3 grams) with intent to deliver; (3) attempt to deliver methamphetamine; (4) possession of drug paraphernalia; and (5) being subject to sentencing enhancement due to prior convictions.

*contingent* on Plunk's acceptance of the State's offer. It is undisputed that a "conflict of interest" existed at the moment that Prosecutor Bradford made the plea offer to Plunk and Devries;[4] therefore, the question is whether this conflict of interest "affected counsel's performance." *Mickens*, 535 U.S. at 171 ("'[A]n actual conflict of interest' mean[s] precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties.").

"Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, . . . it may well . . . preclude[ ] defense counsel . . . from exploring possible plea negotiations . . . , provided a lesser charge or a favorable sentencing recommendation would be acceptable." *Holloway*, 435 U.S. at 489–90. "[J]oint representation of conflicting interests is inherently suspect, and . . . counsel's conflicting obligations to multiple defendants 'effectively sea[l] his lips on crucial matters' and make it difficult to measure the precise harm arising from counsel's errors." *Mickens*, 535 U.S. at 168 (quoting *Holloway*, 435 U.S. at 489–90) (third alteration in original).

Here, I find that the conflict of interest may have precluded Moon from negotiating a plea agreement containing a more favorable sentence to Plunk than 99 years' imprisonment—effectively, a life sentence. *See Holloway*, 435 U.S. at 490. Prosecutor Bradford's testimony demonstrates that he would have been open to a more "favorable sentencing recommendation." *See id*. Prosecutor Bradford testified that, prior to trial, Moon indicated to Prosecutor Bradford "that he had . . . tried to discuss the terms of the [package] plea offer with Mr. Plunk, . . . but . . . was having

---

[4]At oral argument, I asked the State's counsel whether counsel agreed that Moon's recommendation to Plunk to accept the plea deal that was beneficial and favorable to Devries created an actual conflict of interest. While the State's counsel responded that she was unsure whether Moon actually gave such advice to Plunk, she "assume[d] that to be true" "[f]or the sake of [the State's] argument." She agreed that such advice would create a conflict of interest.

some difficulty . . . getting Mr. Plunk to understand what he was trying to explain to him. One minute [Plunk] seemed to understand. The next minute, he did not." App. 562. According to Prosecutor Bradford, because Moon was "concern[ed] about the way Mr. Plunk was interacting with him when he was trying to explain things to him[,] he felt the need to request a forensic examination." *Id*. Subsequently, Plunk underwent a forensic evaluation, which ultimately found him competent.

During the evidentiary hearing, Plunk's counsel asked Prosecutor Bradford whether he would ever consider "offer[ing] a reduced sentence to a defendant on the basis of something that comes out of a forensic evaluation," even if the evaluation concludes that the defendant is nonetheless competent to stand trial. *Id*. at 564. Plunk's counsel reminded Prosecutor Bradford about his prior deposition testimony, and the following exchange occurred:

> [Plunk's counsel:] And I asked you on line 15: What about something about the defendant, like diminished capacity, you know, like mental health, physical health, something like that?
>
> * * *
>
> A. [by Prosecutor Bradford] My response was: Yeah, sometimes I would say that if the forensic report comes back and they are—they are fit to proceed, they are competent, but there is some extenuating circumstance, perhaps their IQ is borderline, if there's something there, *I am willing to consider that*.
>
> Q. So your testimony at your deposition is that you would be willing to consider—
>
> A. Yes. I'm always open to listen to just about anything that the defense wants to present, or something in the forensic report they want me to take a second look at, *I'm willing to do that*.

*Id*. at 565–66 (emphases added). But Prosecutor Bradford did not recall Moon presenting him with such mitigating evidence in Plunk's case. *Id*. at 566.[5]

Prosecutor Bradford also testified that although Moon never approached him about Plunk providing information about his suppliers to investigators, it was "always a possibility" that "Plunk would have received less prison time" had Moon approached Prosecutor Bradford about Plunk's cooperation in the investigation. *Id*. at 571–72.

This is not a case in which the prosecutor "flat[ly] refus[ed] to engage in plea bargaining." *Burger*, 483 U.S. at 786 (quotation and citation omitted). Instead, the record evidence cited above shows that Prosecutor Bradford "would have been receptive to a plea bargain" containing a more favorable sentence based on mitigating evidence and cooperation, had Moon presented such evidence. *Cf. Burger*, 483 U.S. at 785 ("The notion that the prosecutor would have been receptive to a plea bargain is completely unsupported in the record.").

Despite record evidence that Prosecutor Bradford was willing to entertain a more favorable sentence to Plunk than 99 years' imprisonment, the majority concludes that "Moon's representation of Devries did not adversely affect his negotiations on behalf of Plunk, because Plunk was unwilling to plead guilty to attempted murder, and the State was unwilling to forego that charge." Part II.A., *supra*. In support of its conclusion, the majority cites Prosecutor Bradford's testimony that the State was unwilling to forego the attempted-murder charge and that "the inability to reach an agreement on the attempted murder charge 'was ultimately what led to us having to

---

[5]During the State's cross-examination of Prosecutor Bradford, he indicated that he "didn't see anything in the cases that [he] would consider to be mitigating." *Id*. at 580. During redirect examination, Prosecutor Bradford reaffirmed that, in addition to seeing nothing mitigating in the forensic report, Moon never provided him with any mitigating evidence. *Id*. at 591.

try the case.'" *Id*. (citing App. 560). It also cites Moon's testimony that Plunk did not think "that the attempted capital murder charge was justified" and that the "attempted capital murder charge was the most important [charge] to [Plunk]." App. 442. However, the majority *omits* Prosecutor Bradford's additional testimony about why the State and Plunk were unable to reach a plea agreement—Plunk's difficulty understanding the terms of the proposed plea agreement. App. 562. During the evidentiary hearing, Plunk's counsel asked Prosecutor Bradford, "So at that time, when Mr. Moon was willing to take [the "package" plea deal] to his clients, why did that not result in a disposition at that time?" As discussed previously, Prosecutor Bradford responded that Moon "was having some difficulty . . . getting Mr. Plunk to understand what he was trying to explain to him," which resulted in the competency hearing. *Id*.

Plunk need not show that a more favorable plea agreement *would have been entered* absent the conflict; instead, to prove that Moon's conflict of interest prevented him from seeking a better plea agreement for Plunk alone, he need show only that "a lesser charge or a favorable sentencing recommendation would be acceptable" to the prosecution. *Holloway*, 435 U.S. at 489–90. Plunk has met this burden based on Prosecutor Bradford's testimony. Furthermore, even if the true reason for the failure to reach a plea agreement was the State's insistence on an attempted-murder conviction and Plunk's refusal to plead guilty to that offense, a competent attorney not laboring under a conflict of interest would have pursued a deal containing a more favorable sentence to his client, even if it included the objected-to charge. Plunk was presented only with a plea deal containing (1) an unfavorable term—pleading to attempted murder—*and* (2) an unfavorable sentence—a 99-year sentence pursuant to a plea of guilty to all of the *Plunk 1* and *Plunk 2* offenses (effectively, a life sentence). Despite the State's refusal to negotiate on the attempted-murder charge, Moon could have proposed an agreement in which Plunk pleaded guilty to the attempted-murder charge but did not receive a life

-19-

sentence. When presented with a more favorable sentencing term, Plunk may no longer have been at "loggerheads" with the State over the attempted-murder charge.

In finding that no actual conflict of interest existed, the district court did not address whether Plunk waived the right to effective assistance of counsel in hiring Moon to represent Devries and himself.

> We have consistently held that the right to effective assistance of counsel may be waived, provided that waiver is knowing, voluntary and intelligent. *See United States v. Bryant*, 766 F.2d 370, 377 (8th Cir. 1985), *cert. denied*, 474 U.S. 1054, 106 S. Ct. 790, 88 L. Ed. 2d 768 (1986); *United States v. Poston*, 727 F.2d 734, 738 (8th Cir.), *cert. denied*, 466 U.S. 962, 104 S. Ct. 2179, 80 L. Ed. 2d 561 (1984); *Larry Buffalo Chief v. State of South Dakota*, 425 F.2d 271, 280 (8th Cir. 1970). Once a valid waiver is found to exist, we need not inquire whether an "actual conflict of interest exists." *Bryant*, 766 F.2d at 378; *see also Larry Buffalo Chief*, 425 F.2d at 280.
>
> * * *
>
> Therefore, a waiver can be valid if obtained during a state trial court proceeding even if the state court does not conduct an on-the-record inquiry, provided that the waiver is knowing, voluntary, and intelligent. *See Larry Buffalo Chief*, 425 F.2d at 280; *accord Harris v. State*, 609 S.W.2d 723, 724 (Mo. App. 1980) (testimony at 27.26 hearing sufficient to determine whether waiver valid); *Davis v. State*, 573 S.W.2d 736, 737 (Mo. App. 1978); *cf. Cuyler v. Sullivan*, 446 U.S. 335, 346, 100 S. Ct. 1708, 1717, 64 L. Ed. 2d 333 (1980) ("nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case").

*Henderson v. Smith*, 903 F.2d 534, 536–37 (8th Cir. 1990). "[I] cannot discern from this record . . . whether, in fact, such a waiver was made. [I], therefore, [would] direct

-20-

the district court to consider this issue at [an] evidentiary hearing" on remand."[6]

---

[6]The record does contain some relevant testimony. For example, Robert Hall is an inmate who assists other inmates with their legal work. Hall helped Plunk to file his initial habeas petition. Hall testified to statements that Plunk made to him while they were incarcerated together. Hall testified on direct examination as follows:

Q     Mr. Hall, . . . when you said you reviewed Mr. Plunk's papers, . . . you thought that he had some claims to raise?

A     Yes, ma'am.

Q     And what was that?

A     Well, when I found this drug task force report and I asked Terry who she was and I asked him had he ever heard of a conflict of interest and he said no, he didn't know what that was. And I said, Well, it's when two defendants have—when two people have an antagonistic defense. And he didn't know what that was either, and so I said, You sure you never heard your attorney talk about a conflict of interest while y'all were in trial at any time. He says, No, I'm almost positive I've never heard that word. So I sat down and explained to Terry about the conflict of interest.

      Terry had told me that he had paid Moon to represent Ms. Devries also. And that Moon, Attorney Moon, had represented both of them on the case. And then I explained, of course, to Terry that he couldn't represent both of them because of what had happened, there was a conflict of interest, and, of course, over and over and over I had to tell him several, several times.

Q     Why did it take so long do you think? Why did you have to tell him several times?

A     He doesn't grasp legal or arguments. He doesn't understand or he didn't understand the significance of everything I was trying to explain to him.

-21-

*Unger*, 665 F.2d at 256.

On this record, I conclude that the district court erred[7] in finding that "negotiations [of a package plea deal] did not adversely affect [Plunk's] defense." *Plunk*, 2011 WL 6963092, at *21. Accordingly, I would reverse and remand for further proceedings, which would include an evidentiary hearing on the issue of waiver.

---

Furthermore, Plunk testified that he met Moon through his son and his son's ex-wife while he was in jail in Missouri. Then, he testified under direct examination as follows:

Q    Did [Devries] ever get a lawyer?

A    I helped her get a lawyer.

Q    Okay. And who was her lawyer?

A    Phillip Moon.

\* \* \*

Q    Okay. And when you hired Phillip Moon for you and Deb, did he say anything to you that it might be a problem for him to represent both of you?

A    No.

Q    And who paid Phillip Moon?

A    Me.

[7]Because of the result that I reach as to Plunk's conflict-of-interest argument, I would not address his additional claims of ineffectiveness. *See* Part II.B–D., *supra*.