# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4008
_____

United States of America

*Plaintiff - Appellee*

v.

Robert Carl Sharp

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: September 21, 2017
Filed: January 5, 2018

_____

Before SMITH, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Robert Carl Sharp pleaded guilty after a grand jury returned a three-count superseding indictment charging him with (1) conspiracy to manufacture and distribute a controlled substance, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1); and (3) possession with intent to distribute, and aiding and abetting the possession with

intent to distribute, a controlled substance, in violation of 21 U.S.C. § 841(a)(1). Sharp subsequently filed a motion to withdraw his guilty plea. The district court[1] denied the motion and sentenced Sharp to thirty years' imprisonment. He now appeals the judgment, arguing that the district court abused its discretion in denying the motion and that it plainly erred in failing to reconsider the motion *sua sponte* in light of evidence presented at the sentencing hearing. For the reasons that follow, we affirm.

## I.

In 2012, Sharp was released from federal prison after serving a sentence for possession with intent to distribute cocaine base. While on supervised release, he began manufacturing and selling synthetic cannabinoids in Illinois and then Iowa.

Sharp purchased synthetic-cannabinoid chemicals in bulk from various suppliers, and he and his employee would apply them to leafy substances. They would then package and label these "herbal incense" products for sale. The packaging included a warning that the products were not fit for human consumption, even though Sharp knew that customers would smoke them. Sharp admitted to knowing that his products caused "disorientation" and had "no other good use," although he added that they did not produce "a euphoric high" like marijuana. Notably, Sharp paid his employee in cash, and his emails ordering a chemical he called "THJ-011" included the heading "AB-FUBINACA."

According to Sharp, he and another incense dealer named Hadi Sharairi hired attorney Joel Schwartz for advice about what products were legal to sell and to ensure

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, adopting the report and recommendation of the Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa, now retired.

that they complied with all federal and state laws. Sharp also stated that Schwartz failed to warn him that the government had scheduled AB-FUBINACA as a controlled substance. Sharp said that he informed Schwartz of this oversight and complied with Schwartz's instruction to dispose of all products that contained the chemical. Sharp also claimed that he sent Schwartz a sample of a substance that he believed was THJ-011 for testing along with a $900 money order. Sharp maintained that when he asked for the results, Schwartz responded "that he could no longer have products tested."

Schwartz's recollection of the attorney-client relationship differed. During the hearing on Sharp's motion to withdraw his guilty plea, Schwartz testified that Sharp sought representation "for a potential future criminal case" after a previous encounter with law enforcement—not advice about how to sell synthetic drugs legally. Schwartz explained that he warned Sharp "that everything synthetically that causes impairment of the brain either was listed or was an analog or would be soon thereafter." As a result, he informed Sharp that "if he were charged with something, he would be a career offender and this was too dangerous a game for him to play and he should stop."

Nonetheless, Schwartz acknowledged that he did offer Sharp advice on whether certain substances were legal. In particular, in response to a query from Sharp, Schwartz searched for THJ-011 on the website of the Drug Enforcement Agency and on Google. Although he did not find anything indicating that it was illegal, he did not inform Sharp that the substance was therefore legal. And though Schwartz could not recall specifically advising Sharp that it was illegal, he nevertheless warned him that "everything that's selling as synthetics either is now or will soon be illegal once the Government finds that you have it." Schwartz also advised Sharp that he was violating FDA regulations by selling misbranded products. In addition, Schwartz testified that he had no recollection of Sharp giving him a

sample for testing and that, if Sharp had, he would have destroyed it because "I'm not going to have something that might be an illegal narcotic in my office."

In early 2014, law enforcement began investigating Sharp's activities. Investigators sent a confidential source to make purchases at Sharp's store. An employee told the source that Sharp was not in and "probably took [the herbal incense] with him." The employee said that, with "raids happening everywhere," Sharp was "just being smart." A subsequent controlled purchase provided probable cause that Sharp was selling controlled substances, and law enforcement officers executed search warrants on his residence, his vehicle, a storage unit that he acquired under a false name, and his employee's residence. They found products containing AB-FUBINACA, which is a Schedule I controlled substance, as well as $88,663 in cash proceeds from the cannabinoids. The grand jury then returned the three-count superseding indictment.

Just before trial was to begin, Sharp pleaded guilty to all three counts without a plea agreement. During the plea colloquy, Sharp admitted his involvement in and knowledge of a conspiracy to manufacture and distribute AB-FUBINACA (Count 1). For the possession with intent to distribute counts (Counts 2 and 3), however, Sharp insisted that he thought that he was distributing THJ-011 rather than AB-FUBINACA. Nevertheless, he pleaded guilty to Counts 2 and 3 under a theory of willful blindness. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).

In December 2015, Sharp retained new counsel and moved to withdraw his guilty plea. Following an evidentiary hearing at which both Sharp and Schwartz testified, the magistrate judge issued a report and recommendation concluding that Sharp's motion should be denied. The district court overruled Sharp's objections, adopted the magistrate judge's report and recommendation, and denied Sharp's

-4-

motion to withdraw his guilty plea. Following an evidentiary hearing,[2] Sharp was sentenced to thirty years' imprisonment.

## II.

We review the denial of a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Van Doren*, 800 F.3d 998, 1001 (8th Cir. 2015). A defendant may withdraw a plea of guilty before the court imposes a sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "While the standard is liberal, the defendant has no automatic right to withdraw a plea." *United States v. Heid*, 651 F.3d 850, 853 (8th Cir. 2011). A defendant bears the burden of establishing a fair and just reason. *United States v. Cruz*, 643 F.3d 639, 642 (8th Cir. 2011). We conclude that the district court did not abuse its discretion in denying Sharp's motion to withdraw his guilty plea.

### A. Conflict of interest and ineffective assistance of counsel

Sharp first argues that the district court abused its discretion in refusing to allow him to withdraw his guilty plea because his lawyer had a conflict of interest and provided him ineffective assistance of counsel. In particular, Sharp argues that Schwartz had a conflict of interest because he was a vital fact witness as to Sharp's *mens rea*. *See United States v. Merlino*, 349 F.3d 144, 152 (3rd Cir. 2003) (explaining that the possibility of counsel's "being called as a witness was a . . . source of potential conflict, as it is often impermissible for an attorney to be both an advocate and a witness"). In this circuit, it is unclear whether this sort of alleged conflict of interest requires a defendant to show deficient performance and prejudice

---

[2]At the hearing, Hadi Sharairi testified about a letter Sharp wrote urging him to make false statements. In addition, Sharp introduced recordings of several conversations he had with Schwartz when Sharp was in jail awaiting trial.

under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), or whether it is sufficient for a defendant to show that a conflict of interest "adversely affected his lawyer's performance," *see Caban v. United States*, 281 F.3d 778, 781-84 (8th Cir. 2002) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). We need not choose between the *Strickland* and *Cuyler* standards because Sharp's claim fails under both.

Under *Cuyler*, Sharp must identify "some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." *See Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004). He must show that "the conflict caused the attorney's choice." *See id.* According to Sharp, Schwartz could have testified that Sharp thought the substance was THJ-011 and that he investigated whether it was on the drug schedules. Sharp maintains that Schwartz's testimony would have established that he did not satisfy the two elements of willful blindness: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769; *see also United States v. Hansen*, 791 F.3d 863, 868 (8th Cir. 2015) ("[T]he jury may find willful blindness only if the defendant was aware of facts that put him on notice that criminal activity was probably afoot and deliberately failed to make further inquiries, intending to remain ignorant."). Had he realized that Schwartz was a potential witness, Sharp claims he would have gone to trial instead of pleading guilty.

As the Supreme Court has explained, the Government can prove knowledge under 21 U.S.C. § 841(a) through either direct or circumstantial evidence:

> Direct evidence could include, for example, past arrests that put a defendant on notice of the controlled status of a substance. Circumstantial evidence could include, for example, a defendant's concealment of his activities, evasive behavior with respect to law

enforcement, [and] knowledge that a particular substance produces a "high" similar to that produced by controlled substances . . . .

*McFadden v. United States*, 135 S. Ct. 2298, 2304 n.1 (2015) (citation omitted).

Inasmuch as Schwartz's testimony would have probative value under this standard, Sharp has not shown that such a strategy would have been "objectively reasonable under the facts of this case," nor has he shown that Schwartz's advice to plead guilty "was linked to the actual conflict." *See Covey*, 377 F.3d at 908. Schwartz reasonably expected that the Government could prove beyond a reasonable doubt that Sharp knowingly possessed a controlled substance. Indeed, in his testimony at the plea withdrawal hearing, Schwartz mentioned the undercover purchase attempt where Sharp's employee stated that Sharp took the herbal incense out of the store at night; Sharp's emails ordering THJ-011 under the heading of AB-FUBINACA; the alias Sharp used to purchase a storage locker for the incense; his paying his employee in cash; and his labeling the incense as not for human consumption even though Sharp knew his customers were smoking it. In addition, Sharp knew that the substance had a disorienting effect, and his prior drug conviction demonstrates some familiarity with the drug laws. Moreover, had Schwartz testified, he would have explained that he told Sharp that synthetic drugs were either illegal or would soon be classified as illegal. He also would have stated that he told Sharp that this business was "too dangerous" and that Sharp should stop.[3] If anything, such

---

[3]Sharp's failure to heed Schwartz's instruction to stop selling synthetic cannabinoids also precludes Schwartz's testimony as part of an advice-of-counsel defense strategy. To rely upon an advice-of-counsel defense, a defendant must show that he "(i) fully disclosed all material facts to his attorney before seeking advice; and (ii) actually relied on his counsel's advice in the good faith belief that his conduct was legal." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006). Even assuming Sharp satisfied the first element, Schwartz's testimony establishes that he failed to satisfy the second element.

testimony would burnish the Government's case that Sharp *did* know that his product was illegal. Given these facts, the alleged conflict did not adversely affect Schwartz's performance in advising Sharp to plead guilty. For the same reasons, Sharp also fails to establish deficient performance and prejudice under *Strickland*'s more stringent standard. *See* 466 U.S. at 687; *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (explaining that there is prejudice under *Strickland* when, but for counsel's errors, defendant would not have pleaded guilty and would have insisted on going to trial).

In addition to alleging that Schwartz had a conflict of interest, Sharp further argues that Schwartz provided ineffective assistance of counsel because Schwartz misinformed him about willful blindness. For this second claim, Sharp must show both deficient performance and prejudice. *See Strickland*, 466 U.S. at 687. He argues that Schwartz incorrectly advised him that he was willfully blind *merely* because he did not have the chemical tested. Sharp points out that testing may not have been a realistic option because most laboratories would not accept potentially illegal substances.

In light of the evidence against Sharp, Schwartz's advice concerning willful blindness was neither deficient nor prejudicial. Sharp professed his ignorance of the true identity of THJ-011 even though Schwartz's reasonable assessment of the evidence indicated that the Government would be able to prove his *actual* knowledge beyond a reasonable doubt. Nonetheless, in the face of Sharp's insistence that he thought the chemical was THJ-011, Schwartz reasonably concluded that the Government could also establish Sharp's *mens rea* under a theory of willful blindness. *See Global-Tech*, 563 U.S. at 769 ("[A] willfully blind defendant is one who . . . can almost be said to have actually known the critical facts."); *United States v. Galimah*, 758 F.3d 928, 931 (8th Cir. 2014) ("A deliberate ignorance or a willful blindness instruction is a mechanism for inference, not a substitute for knowledge." (internal quotation marks omitted)).

Despite the Government's strong case, Sharp might have been able to refute the inference that he had the requisite knowledge if a reputable lab had tested the substance. *Cf. United States v. Makkar*, 810 F.3d 1139, 1147-48 (10th Cir. 2015) (explaining that evidence that defendants asked state law enforcement agents to test the incense they were selling was relevant to *mens rea*). However, his failure to have the substance tested made it almost impossible for him to rebut the Government's case. In other words, the mere failure to test was not enough to establish willful blindness, but Sharp's failure to have the substance tested in the face of such overwhelming evidence indicated that he was, at the very least, "burying [his] head in the sand." *See United States v. Florez*, 368 F.3d 1042, 1044 (8th Cir. 2004) ("Ignorance is deliberate if the defendant was presented with facts that put her on notice that criminal activity was particularly likely and yet she intentionally failed to investigate those facts."). As a result, Schwartz's advice concerning willful blindness was not deficient and did not prejudice Sharp. *See Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004) ("[S]trategic and tactical decisions made by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective-assistance claim under *Strickland*.").

For all these reasons, the district court did not abuse its discretion in refusing to allow him to withdraw his guilty plea.

## B. Factual basis for guilty plea

Sharp also argues that the district court abused its discretion in refusing to allow him to withdraw his guilty plea because the plea lacks an adequate factual basis. Federal Rule of Criminal Procedure 11(b)(3) mandates that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." A defendant establishes a fair and just reason for withdrawing his guilty plea by demonstrating that his plea is not supported by an adequate factual basis. *United*

*States v. Heid*, 651 F.3d 850, 855-56 (8th Cir. 2011). "A guilty plea is supported by an adequate factual basis when the record contains sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense." *United States v. Cheney*, 571 F.3d 764, 769 (8th Cir. 2009) (internal quotation marks omitted). Because there was no plea agreement or stipulated facts, the district court relied on the Government's Rule 11 letter and the plea colloquy to determine whether there is a sufficient factual basis.

The Government had to establish that Sharp *knowingly* possessed a controlled substance. *See* 21 U.S.C. § 841(a). Sharp needed to know that he possessed a substance listed on the controlled substance schedules, even if he did not know the particular substance. *See McFadden*, 135 S. Ct. at 2304. Alternatively, the knowledge requirement would be met if Sharp knew the particular substance he possessed, even if he did not know that it was illegal. *See id.*

But Sharp insisted that he thought the substance was THJ-011, which is not listed on the federal drug schedules, and not AB-FUBINACA, which is listed. As a result, he was unwilling to plead guilty on either of the two grounds established in *McFadden*. Instead, he pleaded under the alternative theory of willful blindness. During the plea colloquy, the magistrate judge therefore inquired whether he "believed there was a high probability that the substance in [his] possession was subject to federal drug laws and [if he] took deliberate action to avoid learning the true identity of the substances." Though Sharp answered affirmatively, he now argues that the record lacks a factual basis for either prong of willful blindness. *See Global-Tech*, 563 U.S. at 769.

First, Sharp argues that there is an insufficient factual basis that he believed that there was a high probability that the substance in his possession was a controlled substance. In *McFadden*, the Supreme Court rejected the Government's proposed

jury instruction stating that the knowledge requirement would be met if the "defendant knew he was dealing with an illegal or regulated substance *under some law*." *McFadden*, 135. S. Ct. at 2306 (emphasis added and internal quotation marks omitted). The Court explained that Section 841(a) instead "requires that a defendant knew he was dealing with 'a controlled substance.' That term includes only those drugs listed on the federal drug schedules or treated as such by operation of the Analogue Act. It is not broad enough to include all substances regulated by any law." *Id.* (citation omitted).

During the plea colloquy, the magistrate judge did not use the phrase "controlled substance" or refer specifically to the Controlled Substances Act ("CSA"), the federal drug schedules, or the Analogue Act. Instead, he asked, "Did you believe there was a high probability that those—that substance or substances were subject to federal drug laws?" Sharp answered, "Under some federal drug law, yes." Because there are federal drug laws besides the CSA and the Analogue Act, including federal labeling regulations, Sharp argues that his response was too broad and that his conviction violates *McFadden*.

Furthermore, Sharp maintains that, because he was prosecuted for possessing a controlled substance under 21 U.S.C. § 841(a)—and not under the Analogue Act—the Government must meet a stricter *mens rea* requirement. Specifically, Sharp contends that the Government must establish that he knew (or was willfully blind to) the identity of the substance he possessed—which Sharp has denied knowing—or that he knew (or was willfully blind to the fact) that the substance was on the controlled substance schedules. Sharp therefore argues that the Government cannot rely on evidence that he believed (or was willfully blind to the fact) that the substance was treated as a controlled substance by operation of the Analogue Act because it was "substantially similar" to a substance on the drug schedules. *See* 21 U.S.C. § 802(32)(A). In effect, Sharp maintains that the plea colloquy would have been

insufficient even if the magistrate judge had specifically asked whether Sharp believed there was a high probability that the substance in his possession was "listed on the federal drug schedules *or treated as such by operation of the Analogue Act*," the very language proposed by *McFadden*. Instead, Sharp claims that the plea colloquy must provide specific evidence for his belief that there was a high probability that the substance in his possession was on the federal drug schedules.

We disagree and find an adequate factual basis for the plea. First, the magistrate judge's reference to "federal drug laws" avoids the overbreadth concern identified in *McFadden*. The magistrate judge did not ask Sharp if he thought there was a high probability that the substances were regulated by "any law." Instead, he referred to "federal drug laws." The meaning of this phrase was sufficiently clear in the context of the proceeding. Indeed, in denying Sharp's motion to withdraw his plea, the district court explained that the words "can be understood in context to refer to the Controlled Substances Act or the Controlled Substance Analogue Enforcement Act of 1986." Moreover, the Supreme Court itself used the shorthand "federal drug schedules." *See McFadden*, 135 S. Ct. at 2306.

We also disagree that the district court needed to find that Sharp knew that there was a high probability that the substance was specifically on the controlled substance schedules. Evidence in the record that Sharp believed that there was a high probability that the substance was an analogue is sufficient for establishing willful blindness. Under federal law, analogues are themselves treated as controlled substances. *See* 21 U.S.C. § 813 ("A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."). Moreover, the Government needs to establish only general criminal intent to obtain a conviction under Section 841(a). As we have explained, "The Government is not required to prove that the defendant actually knew the exact nature of the substance with which he was dealing. The

-12-

'knowingly' element of the offense refers to a general criminal intent, i.e., awareness that the substance possessed was a controlled substance of some kind." *United States v. Ramos*, 814 F.3d 910, 915 (8th Cir. 2016) (internal quotation marks and alterations omitted), *cert. denied*, 137 S. Ct. 177 (2016). In other words, when the Government proves beyond a reasonable doubt that a defendant believed that a substance was an analogue intended for human consumption, that defendant cannot escape liability because the substance turned out to have been on the controlled substance schedules. The belief that he possessed an analogue establishes the defendant's knowledge. Therefore, the magistrate judge's generalized reference to the CSA and the Analogue Act was sufficient to establish a factual basis for the plea.[4]

Second, after establishing that Sharp thought that there was a high probability that the substances in his possession were controlled substances, the magistrate judge asked if Sharp took "deliberate action to avoid learning the true identity of the substance and whether or not, in fact, it was subject of a federal drug law?" Sharp answered, "By not getting it tested, yes, yes, I did." Sharp now argues that this answer is insufficient to support willful blindness because he admitted only that he had not had the product tested, mistakenly believing that this in itself established willful blindness. He now maintains that this assumption was wrong because there is not an affirmative obligation to have a product tested.

As mentioned above, a factual basis requires only that "the record contains sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense." *Cheney*, 571 F.3d at 769

---

[4]The Government's Rule 11 letter also contains additional information suggesting Sharp had the requisite knowledge. It describes how Sharp's employee told the confidential source who visited Sharp's store that Sharp was not in and "probably took it with him." The employee added that, with "raids happening everywhere," Sharp was "just being smart."

(internal quotation marks omitted). The magistrate judge explicitly asked whether Sharp took deliberate action to avoid learning the true identity of the substance. Sharp answered yes and provided an example of a relevant omission. As a result, the district court's conclusion that there is a sufficient factual basis is reasonable. *See Florez*, 368 F.3d at 1044.

For these reasons, Sharp's guilty plea rests on an adequate factual basis and the district court did not abuse its discretion in denying his motion.

## C. Court's failure to reconsider the motion *sua sponte*

Finally, Sharp argues that the district court should have reconsidered his motion to withdraw the guilty plea *sua sponte* at sentencing. Because he failed to renew his motion to withdraw his guilty plea at sentencing, we review for plain error. *See United States v. Pate*, 518 F.3d 972, 975 (8th Cir. 2008). Under plain error review, Sharp must prove that (1) there was error, (2) that was plain, and (3) affected substantial rights. *See United States v. Adejumo*, 772 F.3d 513, 538 (8th Cir. 2014). If these three conditions are met, we may exercise our "discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal quotation marks omitted).

Sharp maintains that the telephone recordings of his conversations with Schwartz and the testimony of several witnesses corroborate his claims of innocence and show that the district court was wrong to credit Schwartz's testimony over his own. As a result, he suggests that the district court should have reconsidered his motion to withdraw his guilty plea even though he did not renew it. Though much of this evidence echoes Sharp's insistence that he believed the substance was THJ-011, it nevertheless fails to rehabilitate his credibility. Above all, Hadi

Sharairi's testimony—suggesting that Sharp urged him to lie to the police—undermines Sharp's protestations of innocence.

Because the evidence elicited at sentencing neither rehabilitates Sharp's credibility nor undermines the evidence of his guilt, the district court did not plainly err in failing to reconsider the motion to withdraw the guilty plea *sua sponte*.

## III.

Accordingly, we affirm Sharp's conviction because the district court did not abuse its discretion in denying Sharp's motion to withdraw his guilty plea or plainly err in refusing to reconsider that motion *sua sponte* at sentencing.

———————————————