# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1365

_____

Robert Carl Sharp

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 16, 2025
Filed: March 31, 2025

_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Robert Carl Sharp appeals the district court's[1] denial of his 28 U.S.C. § 2255 motion. Sharp claims that his pretrial counsel's performance was ineffective due to that counsel's previous representation of multiple potential witnesses. We conclude that Sharp did not receive ineffective assistance of counsel and affirm.

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

As this court summarized in *United States v. Sharp*, 879 F.3d 327 (8th Cir. 2018), Sharp was released from federal prison in 2012 after serving a sentence for possession with intent to distribute cocaine base. While on supervised release, Sharp sold herbal incense products containing a chemical that he referred to as "THJ-011," but which was in fact a synthetic cannabinoid and Schedule I controlled substance known as AB-FUBINACA. Law enforcement learned in May 2014 that Sharp was selling AB-FUBINACA and arrested him for violating the terms of his supervised release.

While in custody, Sharp participated in a proffer interview, in which he was represented by attorney Joel Schwartz. Sharp told the interviewing officers that he had provided samples of synthetic cannabinoids to Mohammad and Melissa Al Sharairei. In addition, Sharp told the officers that he regularly sold synthetic cannabinoids to an incense dealer named Hadi Sharairi. According to Sharp, Sharairi knew that Sharp "was manufacturing synthetics and that it was illegal." Sharairi and the Al Sharaireis were eventually indicted for their roles in the same synthetic cannabinoid drug sweep that implicated Sharp.

In September 2015, a grand jury indicted Sharp for conspiracy to manufacture and distribute a controlled substance (i.e., AB-FUBINACA), *see* 21 U.S.C. § 846, and possession with intent to distribute that same controlled substance, *see id.* § 841(a)(1). While represented by Schwartz, Sharp pleaded guilty to all counts without a plea agreement.

In December 2015, while awaiting sentencing, Sharp retained Michael Lahammer as his new counsel and filed a motion to withdraw his guilty plea. Sharp asserted that he did not know that THJ-011 was in fact AB-FUBINACA and that Schwartz had told him that his conduct was legal. Sharp therefore claimed that Schwartz had represented him while operating under an actual conflict of interest

because Schwartz was simultaneously acting as his attorney and necessarily would also be a witness for his advice of counsel defense.

At a subsequent hearing on the motion before a magistrate judge, Sharp testified that he and Sharairi had hired Schwartz to advise them on the legality of selling herbal incense products. Sharp asserted that they had met together with Schwartz at least two times. In those meetings, Sharp claimed that Schwartz told Sharairi that he had tested products for the Al Sharaireis because he was advising them on their legality. Sharp claimed that Schwartz never warned him that the government had scheduled AB-FUBINACA as a controlled substance and that he had sent Schwartz a sample of THJ-011. Schwartz, who also testified at the hearing, stated that Sharp had told him that he was selling synthetic cannabinoids and had sought representation "for a potential future criminal case"—not for advice on how to sell his herbal incense products legally. He testified that he told Sharp to stop selling synthetic cannabinoids and that he had no recollection of Sharp ever giving him a sample of THJ-011. The magistrate judge found Schwartz to be credible, Sharp not to be credible, and issued a report and recommendation that Sharp's motion to withdraw his guilty plea be denied. The district court adopted the report and recommendation and denied Sharp's motion.

At Sharp's sentencing, Sharp contested whether he was subject to an enhancement for obstruction of justice based on a letter he had authored to Sharairi before he was indicted. In the letter, Sharp informed Sharairi that he was going to be indicted and needed Sharairi to "quickly act on" that information. Specifically, Sharp told Sharairi: "[T]o confirm what's already obvious. That we hired Schwartz together, the amount we paid him, what he told us he'd provide us with, that he took samples for testing, that we spoke to him about THJ-011 and he advised us on [its] legality." Sharairi, who testified at the sentencing hearing, described Schwartz as his "previous lawyer" but otherwise denied much of the substance of Sharp's letter. In particular, Sharairi testified that he had never met Schwartz together with Sharp, did not know "anything about chemicals," had never sent a sample of THJ-011 to

-3-

Schwartz, and Schwartz had never told him to sell products containing THJ-011. The district court sentenced Sharp to 360 months' imprisonment.

Sharp appealed, arguing in relevant part that he received ineffective assistance of counsel because Schwartz operated under an actual conflict of interest by acting as his attorney on the same matter in which he also was a potential witness. Sharp argued that effective counsel would have advised Sharp to proceed to trial instead of pleading guilty. We affirmed Sharp's conviction, concluding that Sharp had not shown that "such a strategy would have been objectively reasonable under the facts," or that "Schwartz's advice to plead guilty was linked to the actual conflict." *Sharp*, 879 F.3d at 334 (internal quotation marks omitted).

Sharp subsequently filed this 28 U.S.C. § 2255 motion, seeking to vacate, set aside, or correct his sentence on the basis that he had been denied effective assistance of counsel. He again asserts that Schwartz had an actual conflict of interest, but this time he claims that the conflict arose out of Schwartz's previous representation of Sharairi and the Al Sharaireis. The district court determined that Sharp had not received ineffective assistance of counsel because he had not shown that Schwartz failed to pursue a reasonable alternative defense strategy due to any of the alleged conflicts. Accordingly, the district court denied Sharp's motion.

II.

We review the denial of a § 2255 motion "as a mixed question of law and fact, affirming the district court's factual findings absent clear error and considering *de novo* its legal conclusions." *Kiley v. United States*, 914 F.3d 1142, 1144 (8th Cir. 2019). There are four grounds upon which a petitioner may obtain relief under 28 U.S.C. § 2255: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose the sentence, (3) the sentence exceeds the maximum sentence authorized by law, or (4) the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255. A sentence is imposed in violation of the Constitution if a petitioner was denied effective

assistance of counsel at trial or on direct appeal. *See* U.S. Const. amend. VI (stating that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence"); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003).

Sharp first claims that he was denied effective assistance of counsel because Schwartz represented Sharp even though he "unequivocally knew that he had previously formed an attorney-client relationship with Hadi Sharairi and Mohammad and Melissa Al Sharairei."[2] According to Sharp, Schwartz's prior representation of these three individuals "created [a] tangled web of duties to each client that impermissibly impaired [Sharp's] right to independent and unbiased legal advice."

In ineffective assistance of counsel cases, we ordinarily ask whether the defendant has demonstrated that, (1) his attorney's performance was deficient and outside the range of reasonable professional assistance and (2) he was prejudiced by his counsel's deficient performance to the extent that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 689, 694 (1984). To show prejudice, a defendant who pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). However, in *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980), the Supreme Court stated that a defendant who "shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain

---

[2]The exact nature of the relationship between Schwartz and Mohammad Al Sharairei is unclear. Both Sharp and Sharairi believed that Mohammad Al Sharairei had retained Schwartz as his attorney. However, the record reflects that only Melissa Al Sharairei—not Mohammad Al Sharairei—had retained Schwartz as her attorney. Schwartz had represented Melissa Al Sharairei in the initial stages of a criminal prosecution, which arose out of the same synthetic cannabinoid investigation that implicated Sharp. That representation ended before Sharp was indicted.

relief" based on ineffective assistance of counsel. "Effect on representation means that the conflict caused the attorney's choice [to engage or not to engage in particular conduct], not that the choice was prejudicial in any other way." *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004) (internal quotation marks omitted). The defendant must "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir. 2006) (internal quotation marks omitted).

In *Cuyler*, counsel's conflict arose out of the joint representation of multiple codefendants. It is unclear whether *Cuyler* applies to all kinds of alleged conflicts of interest, or only those involving the joint representation of multiple codefendants. Indeed, this circuit has not decided whether an alleged conflict of interest arising out of successive representation—as is the allegation Sharp makes in this case—requires a defendant to show deficient performance and prejudice under *Strickland* or whether the defendant need only show that the conflict actually affected the adequacy of his representation under *Cuyler*. *See United States v. Roads*, 97 F.4th 1133, 1137 (8th Cir. 2024). Since Sharp's claim fails under both, we need not choose between the *Strickland* and *Cuyler* standards.

We begin and end with *Cuyler*'s analysis because a defendant who does not show that a conflict of interest actually affected the adequacy of his representation under *Cuyler* necessarily fails to meet *Strickland*'s "more stringent standard." *Sharp*, 879 F.3d at 334. Here, Sharp identifies two alternative defense strategies that Schwartz might have pursued absent the alleged conflicts. First, Sharp claims that Schwartz could have advised him not to plead guilty. Sharp asserts that Schwartz then could have called Sharairi and the Al Sharaireis to testify as witnesses in his favor at trial. Second, Sharp claims that Schwartz could have advised Sharp to enter into a cooperation agreement with the Government to plead guilty and mitigate his

exposure in exchange for testimony against Sharairi or the Al Sharaireis in their respective criminal prosecutions.

Sharp has not shown that either alternative strategy was objectively reasonable under the facts of the case. While Sharp claims that Schwartz should have advised him to proceed to trial and then subsequently called Sharairi and the Al Sharaireis as witnesses, the Al Sharaireis fled the United States in 2014 and were fugitives for the duration of Sharp's prosecution. The Al Sharaireis' fugitive status made it impossible for them to be called as witnesses. And, with respect to Sharairi, any testimony by Sharairi would not have helped Sharp, as demonstrated by Sharairi's testimony at Sharp's sentencing. Sharairi testified that he did not know "anything about chemicals," had never met Schwartz together with Sharp, had never sent a sample of THJ-011 to Schwartz, and Schwartz had never told him to sell products containing THJ-011. Sharp admits that Sharairi's testimony at sentencing "rebut[ted] [the] factual contentions" that he had made at the hearing to withdraw his guilty plea. It was therefore not objectively reasonable for Schwartz to advise Sharp to call Sharairi or the Al Sharaireis as witnesses at trial.

In addition, it was not objectively reasonable for Schwartz to advise Sharp to enter into a cooperation agreement with the Government because there is no indication that Sharp could have entered into one. Sharp presents no evidence that the Government was willing to enter into such an agreement even though, prior to being indicted, Sharp actually participated in a proffer interview in which he discussed his interactions with Sharairi and the Al Sharaireis. Moreover, there is no indication that the Government needed his cooperation given that the Al Sharaireis were fugitives for the duration of Sharp's prosecution and the Government did not charge Sharairi with a federal crime until well after Sharp pleaded guilty. Sharp thus fails to show that any of the alleged conflicts of interest actually affected the adequacy of his representation under *Cuyler*.

Sharp additionally claims that he was denied effective assistance of counsel by his new counsel—Lahammer. In Sharp's motion to withdraw his guilty plea,

Lahammer asserted that Schwartz operated under an actual conflict of interest by simultaneously acting as Sharp's attorney on the same matter in which he was also a potential witness. Sharp faults Lahammer for not also asserting that Schwartz had an actual conflict of interest based on his prior representation of Sharairi and the Al Sharaireis. Because Lahammer did not labor under an actual conflict of interest, we apply *Strickland* as opposed to *Cuyler*. As discussed previously, Sharp has not shown the existence of an actual conflict based on Schwartz's prior representation of Sharairi or the Al Sharaireis. Lahammer therefore did not perform deficiently or act outside the range of reasonable professional assistance in failing to raise the conflict of interest issue concerning Sharairi and the Al Sharaireis. *See Strickland*, 466 U.S. at 689. We conclude that Sharp was not denied effective assistance of counsel. The district court did not err in denying Sharp's § 2255 motion.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____